COLEMAN CATTLE COMPANY, INC., Robert C. Coleman, Individually, Robert Coleman, Inc., Robert Coleman, and Triple B Enterprises, Inc., Appellants,

v.

Ronnie CARPENTIER, Appellee.

No. 09–99–033CV.

Court of Appeals of Texas, Beaumont.

Submitted June 10, 1999.

Decided Feb. 3, 2000.

---

Richard R. Burroughs, Cleveland, for appellant.

Ronald E. Cook, Robert B. Dubose, Cook, Roach & Lawless, L.L.P., Houston, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

EARL B. STOVER, Justice.

Appellants, Robert Coleman, Robert C. Coleman ("R.C.Coleman"), Robert Coleman, Inc. ("RCI"), Coleman Cattle Co., Inc. ("CCC"),[1] and Triple B Enterprises, Inc. ("Triple B"), bring this appeal from a

---

1. Although we recognize that Carpentier named several "Coleman Cattle Company" defendants in his petition, for convenience we will collectively refer to these defendants as Coleman Cattle Co., Inc.

**432**

summary judgment granted in favor of plaintiff/appellee Ronnie Carpentier ("Carpentier").

## BACKGROUND

In December of 1988, Carpentier brought a slander of title suit (cause no. 7841) against RCI claiming that RCI had wrongfully filed a mechanic's and materialmen's lien for work performed by Coleman Construction Company on Carpentier's property. After RCI failed to respond to requests for admissions, Carpentier filed a motion for summary judgment. Based upon the deemed admissions, on September 8, 1989, the trial court granted the motion and entered judgment in favor of Carpentier in the amount of $135,000 plus post-judgment interest and costs of court.

In 1994, in an effort to recover on the judgment in the slander of title suit, Carpentier filed an amended application for turnover, appointment of a receiver, and injunction. Carpentier named RCI, Robert Coleman, R.C. Coleman, Triple B, and CCC as defendants. Carpentier alleged that the judgment debtor had attempted to avoid paying the judgment by hiding assets under the names of the various corporations. Carpentier also maintained that Robert Coleman, RCI, Triple B, and CCC were one and the same.

In 1996, with the former judgment still unsatisfied, Carpentier filed a new suit (cause no. 9121) against R.C. Coleman, individually, and CCC. Carpentier asserted theories of fraudulent conveyance, alter ego, sham to perpetrate a fraud, and denuding the corporation of assets. Subsequently, the trial court consolidated cause no. 7841 (the slander of title suit and the pending turnover application) with cause no. 9121.

In 1998, Carpentier filed a motion for summary judgment. In that motion, Carpentier alleged the appellants made various transfers of two subdivision lots ("the property") in San Jacinto County "through a daisy chain of transfers, fraudulent conveyances, and shell games." Listed below are the alleged transfers and assignments regarding the property in question:

- Robert Coleman transferred title to the property to his corporation Triple B.
- In 1989, the property was sold by Triple B to Stan Nix and Cynthia Nix d/b/a Stan Nix & Associates.
- In March of 1992, Triple B assigned the real estate lien and promissory note on the property to David E. Hickey ("Hickey"), an employee of Robert Coleman, in consideration for cash and a promissory note from Hickey.
- On September 1, 1992, Hickey assigned the lien and promissory note to CCC in consideration for forgiveness of a promissory note existing between Hickey and Triple B.
- On January 19, 1993, CCC purchased the property in a public foreclosure sale.

Finding that there were no genuine issues of any material fact and that Carpentier's claim was proven as a matter of law, the trial court granted Carpentier's motion. The order declared the following: (1) the transfer from Triple B to Hickey is void; (2) the transfer from Hickey to CCC is void; (3) the transfer and substitute trustee's deed in favor of CCC is set aside and canceled; and (4) Robert Coleman is the alter ego of RCI and Triple B. The order additionally granted a levy of execution on the property to satisfy Carpentier's former judgment and ordered that the property be sold at a public auction.

## FINAL JUDGMENT

Before reaching the merits of this appeal, we must first address the question of whether there is a final, appealable order. To be final, a judgment must dispose of all parties and all issues in a lawsuit. *See Schlipf v. Exxon Corp.,* 644 S.W.2d 453, 454 (Tex.1982). The judgment "must determine the rights of the parties

and dispose of all the issues involved so that no future action by the court will be necessary in order to settle and determine the entire controversy." *Wagner v. Warnasch,* 156 Tex. 334, 295 S.W.2d 890, 892 (Tex.1956). In the present case, Carpentier's "denuding the corporation" theory was not presented as a ground in Carpentier's motion for summary judgment and, consequently, was not addressed by the trial court in ruling on the motion. The summary judgment order does not contain a true "Mother Hubbard" clause that disposes of all claims. *See Mafrige v. Ross,* 866 S.W.2d 590, 592 (Tex.1993). However, the judgment included language of finality: "Having considered Ronnie Carpentier's Motion, the pleadings, affidavits, and exhibits on file herein, the Court finds that there is no genuine issue of any material fact, that the claim of Ronnie Carpentier against Defendants is proven as a matter of law and that Ronnie Carpentier is entitled to Judgement as a matter of law." *See Inglish v. Union State Bank,* 945 S.W.2d 810, 811 (Tex.1997) (Judgment was considered final where trial court recited that "there is no genuine issue of any material fact and that the Defendant is entitled to summary judgment in this case" and ordered "that the Plaintiff ... take nothing on account of his lawsuit against Defendant."). Appellants have treated the judgment as final in timely filing this appeal, without objection by Carpentier. From the record before us, we conclude that the trial court and the parties contemplated finality.[2] *See Postive Feed, Inc. v. Guthmann,* 4 S.W.3d 879 (Tex.App.—Houston [1st Dist.] 1999, no pet. h.); *McNally v. Guevara,* 989 S.W.2d 380, 381–82 (Tex.App.—Austin 1999, no pet.).

## PROVING "INTENT" AND "FRAUD" AS A MATTER OF LAW

■ In their third issue appellants ask whether "a trial court [may] grant summary judgment to a plaintiff when essential elements of plaintiff's causes of action involve issues such as 'intent' and 'fraud,' when such matters have traditionally been left to the province of a jury or other factfinder after weighing all of the evidence and credibility of the witnesses[.]"

■ One of the theories asserted by Carpentier was fraudulent conveyance. A fraudulent conveyance is a transfer by a debtor with the intent to hinder, delay, or defraud his creditors by placing the debtor's property beyond the creditor's reach. *See Nobles v. Marcus,* 533 S.W.2d 923, 925 (Tex.1976); *Bado Equip. Co. v. Bethlehem Steel Corp.,* 814 S.W.2d 464, 474 (Tex. App.—Houston [14th Dist.] 1991, no writ). The Texas Uniform Fraudulent Transfer Act is designed to prevent transfers of property with the intent to defraud creditors. *See* Act of June 1, 1987, 70th Leg., R.S., ch. 1004, § 1, 1987 Tex. Gen. Laws 3388, 3390 (amended 1993) (current version at Tex. Bus. & Com.Code Ann. § 24.005(a)(1) (Vernon Supp.2000)); *Connell v. Connell,* 889 S.W.2d 534, 542 (Tex. App.—San Antonio 1994, writ denied).

■■ "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex. 1986). Thus, whether a debtor has conveyed property with the intent to defraud creditors is "ordinarily a question for the jury or the court passing on the fact." *Quinn v. Dupree,* 303 S.W.2d 769, 774, 157

---

2. We note that appellants filed a counterclaim contending that Carpentier's suit was frivolous and brought in bad faith. Although there is no reference in the summary judgment to the counterclaim, we conclude that it was subsumed under Carpentier's causes of action and was disposed of by virtue of the trial court's summary judgment in favor of Carpentier. Having granted Carpentier the requested relief, the trial court in effect found no merit to the contention that Carpentier's suit was filed in bad faith or for harassment purposes. The existence of the counterclaim, in this particular case, does not render the judgment interlocutory.

Tex. 441 (Tex.1957). In some cases, however, intent to defraud can be decided as a matter of law. Specifically, a summary judgment is proper if the defendant admits the fraud, the conveyance instrument is fraudulent on its face, or the undisputed evidence establishes the defendant retained an interest in the property inconsistent with the conveyance alleged. *See Letsos v. H.S. H., Inc.,* 592 S.W.2d 665, 670 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.) (citing *Quinn,* 303 S.W.2d at 769). Additionally, the issue can be decided as a matter of law if the evidence conclusively establishes that the transfer was made without an intent to defraud. *See Connell,* 889 S.W.2d at 542 (issue could be determined as a matter of law where there was no evidence to show that grantee of property had knowledge or notice that community property was conveyed with intent to defraud any creditor).

■ Various facts and circumstances, described as badges of fraud, may be considered in determining fraudulent intent.[3] *See, e.g., Texas Sand Co. v. Shield,* 381 S.W.2d 48, 52–3 (Tex.1964). If, however, "fraudulent intent is only to be deduced from facts and circumstances which the law considers as mere badges of fraud and not fraud per se, these must be submitted to the trier of fact, which draws the inference as to the fairness or fraudulent character of the transaction." *Quinn,* 303 S.W.2d at 774. In his motion for summary judgment, Carpentier presented numerous facts and circumstances which he argued were badges of fraud establishing fraudulent intent.[4] Thus, appellants' fraudulent intent, if any, must be determined after evaluating the various facts and circumstances surrounding the transfers of the property. Such a determination is one

3. The Uniform Fraudulent Transfer Act provides a list of factors that may be considered, among other factors, in determining actual intent:

   (1) the transfer or obligation was to an insider;

   (2) the debtor retained possession or control of the property transferred after the transfer;

   (3) the transfer or obligation was concealed;

   (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

   (5) the transfer was of substantially all the debtor's assets;

   (6) the debtor absconded;

   (7) the debtor removed or concealed assets;

   (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

   (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

   (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

   (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. TEX. BUS. & COM.CODE ANN. § 24.005 (Vernon Supp.2000).

4. First, Carpentier contended and presented documentary evidence to show that Robert Coleman attempted to reopen former bankruptcy proceedings to avoid his debt to Carpentier. Second, he claimed the various entities owned or controlled by appellants were the alter egos of Robert Coleman. Third, Carpentier alleged that Robert Coleman retained an interest in the property irrespective of the transfers made. Specifically, Carpentier presented summary judgment evidence attempting to establish that, from 1989 to 1992, check payments made by Stan Nix on the note were either made payable to Robert Coleman or were personally endorsed by him. Carpentier alleged that in March and April 1992, after the real estate lien and promissory note had been assigned to Hickey, Nix continued to make payments directly to Robert Coleman. In addition, Carpentier presented evidence to show that construction work performed on the property in 1984, 1985, and 1996 was paid for by Robert Coleman, and rental income, derived after the Nixes vacated the property, was sent directly to Robert Coleman. Carpentier also alleged that Hickey's involvement in the assignment of the real estate lien and promissory note was merely a means for the appellants to transfer the property from Triple B to CCC. In summary, Carpentier alleged that the existence of the "alter-egos, the surreptitious foreclosure sale, [and] the retention of ownership of the [p]roperty in the family," all evidence the fraudulent transfers.

which should be made by the trier of fact. Although it may be, as was the case in *Quinn*, that the evidence in this case would support a finding that the transfers of the property and real estate lien and promissory note were made with fraudulent intent, it cannot be said that such intent has been established as a matter of law. *Id.*

■ Carpentier also alleged theories of alter ego and sham to perpetrate a fraud as bases for disregarding the corporate fiction. Whether a corporate fiction should be disregarded is a question of fact which, except in "very special circumstances," should be determined by the jury. See Castleberry v. Branscum, 721 S.W.2d 270, 277 (Tex.1986); see also *Mustang Tractor & Equip. Co. v. Cornett,* 747 S.W.2d 33, 35–36 (Tex.App.—Houston [1st Dist.] 1988, no writ) (In summary judgment action, court of appeals found that Mustang failed to establish "corporate sham" as a matter of law and further noted it had found no case where the corporate sham theory had been established as a matter of law so as to support a summary judgment.). Accordingly, we conclude the trial court erred in granting summary judgment. Appellants' third issue is sustained. Because of our disposition of the third issue, we need not address appellants' remaining issues. We reverse the judgment below and remand the case for trial on the merits.

**REVERSED AND REMANDED.**