**Jose Lopez FLORES and Maria Flores, Appellants,**

v.

**ROBINSON ROOFING & CONSTRUCTION COMPANY, INC., Appellees.**

**No. 2–03–057–CV.**

Court of Appeals of Texas, Fort Worth.

March 24, 2005.

---

Bourland, Kirkman, Seidler, Evans, Jay and Michel, LLP and Richard L. Bourland, Fort Worth, for Appellants.

Law Office of James M. Stanley and Barry G. Johnson, Fort Worth, for Appellees.

Panel A: CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

## OPINION ON REHEARING

ANNE GARDNER, Justice.

After reviewing Appellee's motion for rehearing, we deny the motion. We withdraw our January 13, 2005 opinion and judgment and substitute the following.

## INTRODUCTION

Appellants Jose Lopez Flores and Maria Flores appeal a summary judgment in favor of Appellee Robinson Roofing and Construction Company, Inc. Because we hold that there are issues of material fact

concerning Appellants' fraudulent transfer claims, we reverse and remand.

## BACKGROUND

Jose Flores suffered a brain injury and other injuries while he was working as an employee of M & B Contracting, Inc. M & B was a subcontractor of Robinson Roofing Company, Inc. Flores and his wife, Maria, sued M & B, Robinson Roofing, and others for personal injury damages. During the course of the litigation, M & B filed for bankruptcy,[1] and Robinson Roofing changed its name to R & B Roofing. R & B then filed for bankruptcy, and Appellee Robinson Roofing and Construction Company, Inc. came into existence. In its bankruptcy, R & B listed Appellants as creditors holding a $6,903,000 disputed unsecured claim. However, it did not list its good will or intangible assets. Flores's personal injury suit was abated due to the automatic stay in the R & B Roofing bankruptcy.

Appellants then sued Appellee in the underlying case, alleging that Robinson Roofing fraudulently transferred intangible assets to Appellee. To support their fraudulent transfer claims, Appellants asserted that the two companies were operated by the same principals. Marshall Robinson was president of Robinson Roofing. Bret Barnett, who was married to Robinson's daughter Melissa, was president and a shareholder of M & B, general manager of Robinson Roofing, and president and a director of Appellee. Melissa Robinson Barnett was Appellee's registered agent and its majority shareholder, as well as having been a director and shareholder of M & B.

Appellants also asserted that Robinson Roofing transferred its logo, advertising, graphics, telephone number, and good will to Appellee. Appellants alleged that Robinson Roofing fraudulently transferred those assets after changing its name to R & B Roofing, filing bankruptcy, and dissolving the company in order to escape liability for Jose Flores's tort claim. Southwestern Bell Yellow Pages advertisements for the years 1984–1985, 1990–1991, 1998–1999, and 2000–2001 demonstrate that Appellee had obtained the logo, insignia, and phone number of Robinson Roofing, and in the 2001–2002 ad, Appellee claimed that it had been "Family Owned and Operated for Over 35 Years" even though it had been in business for only three years.

Appellee filed a combined traditional and no-evidence summary judgment motion. In the traditional part of its motion, Appellee argued that, as a matter of law, R & B transferred no goodwill to Robinson Roofing with the intent to defraud Appellants; there was no fraudulent transfer of any kind from R & B to Robinson Roofing; and the good will of R & B had no value at the time of the transfer. In the no-evidence part of its motion, Appellee argued there was no evidence: (1) that the good will of R & B was transferred to Robinson Roofing with the intent to defraud Appellants; (2) that Robinson Roofing was aware of the fraudulent nature of the transfer; (3) that the alleged good will or other assets had any value; and (4) that Appellants were creditors of R & B prior to the transfer. The trial court granted Appellee's summary judgment. Appellants contend that the trial court erred in granting summary judgment because there are questions of material fact.

---

1. M & B listed Appellants as creditors holding a $6,859,000 unsecured claim. M & B was discharged from bankruptcy after the bankruptcy trustee determined that it had no assets.

## STANDARD OF REVIEW

### *No–Evidence Summary Judgment*

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the basis that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex.R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.; Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex.2002). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex.R. Civ. P. 166a(i) & cmt.; *Southwestern Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002).

We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered. *Johnson,* 73 S.W.3d at 197; *Morgan v. Anthony,* 27 S.W.3d 928, 929 (Tex. 2000). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied).

### *Traditional Summary Judgment*

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801, 803 (Tex.1999). The defendant as movant must present summary judgment evidence that negates at least one element of the plaintiff's claim. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Id.*

## DISCUSSION

The bases of the traditional and no-evidence parts of Appellee's summary judgment motion overlap but are not identical. We will consider the no-evidence part of the motion first.

### *No–Evidence Motion*

1. Intent to Defraud.

A fraudulent transfer is a transfer by a debtor with the intent to hinder, delay, or defraud his creditors by placing the debtor's property beyond the creditor's reach. *Nobles v. Marcus,* 533 S.W.2d 923, 925 (Tex.1976); *Coleman Cattle Co., Inc. v. Carpentier,* 10 S.W.3d 430, 433 (Tex.App.-Beaumont 2000, no pet.). The Texas Uniform Fraudulent Transfer Act is designed to prevent transfers of property with the intent to defraud creditors:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation ... with actual intent to hinder, delay, or defraud any creditor of the debtor.

Tex. Bus. & Com.Code Ann. § 24.005(a)(1) (Vernon 2002).

"Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Coleman Cattle Co.,* 10 S.W.3d at 433 (citing *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.

1986)). The question of whether a debtor conveyed property with the intent to defraud creditors is "ordinarily a question for the jury or the court passing on the fact." *Id.* at 433–34 (quoting *Quinn v. Dupree,* 157 Tex. 441, 303 S.W.2d 769, 774 (1957)).

■ TUFTA provides the following non-exclusive list of facts and circumstances, known as badges of fraud, that may be considered in determining fraudulent intent:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

TEX. BUS. & COM.CODE ANN. § 24.005(b). "If, however, 'fraudulent intent is only to be deduced from facts and circumstances which the law considers as mere badges of fraud and not fraud per se, these must be submitted to the trier of fact, which draws the inference as to the fairness or fraudulent character of the transaction.'" *Coleman Cattle Co.,* 10 S.W.3d at 434 (citing *Quinn,* 303 S.W.2d at 774).

■ In this case, Appellants produced summary judgment evidence that the transfer was to an insider, which is defined in TUFTA as a general partner, director, officer, or person in control of the debtor, and their relatives. *See* TEX. BUS. & COM. CODE ANN. § 24.005(a)(1). Bret Barnett and Melissa Robinson Barnett had both been officers of Robinson Roofing, were respectively the general manager and majority shareholder of Robinson Roofing, and were now operating the new company, Appellee Robinson Roofing and Construction, after Robinson Roofing changed its name to R & B, declared bankruptcy, and was dissolved.

There is also evidence that Appellee received and accepted the transfer of the good will and intangible property, from which a reasonable inference may be drawn that a transfer was made. Appellants produced evidence of the usage by Appellee of Robinson Roofing's logo, telephone number, address, and similar name, in addition to the newly formed company's advertisements that it had been "Family Owned and Operated for Over 35 Years."

Furthermore, Robinson Roofing had been sued before the transfer was made. *See id.* § 24.005(b)(4). Robinson Roofing filed a Chapter 11 petition in February 1998 after being sued for personal injuries by Appellants. The bankruptcy petition itself lists a debt to Jose Flores of $6,903,000 as a contingent, unliquidated, and disputed claim that was incurred by the company on September 25, 1990. Remarkably, the Flores claim made up the great majority of the company's secured

and unsecured total debts of $6,994,381. Similarly, the transfer occurred "shortly after a substantial debt was incurred." *See id.* § 24.005(b)(10).

We conclude that Appellants produced more than a scintilla of probative evidence to raise an issue of material fact on the issue of intent under TUFTA; therefore, this issue was improperly decided on summary judgment under either the no-evidence or traditional standard.

### 2. Appellee's Awareness That the Transfer Was Fraudulent.

■ Appellee argues there is no evidence that it was aware of the fraudulent nature of the alleged transfer. A transferee's awareness of the fraudulent nature of a transfer is not an essential element of a fraudulent transfer claim. *See id.* §§ 24.005–.006. Section 24.009(a) provides, however, that a transfer is not voidable under section 24.005(a)(1) if the transferee "took in good faith and for a reasonably equivalent value." But even if "good faith" equals "lack of awareness of the fraudulent nature of the transfer," Appellee's argument fails for two reasons.

■ First, good faith is an affirmative defense to a fraudulent transfer claim. *See* UNIF. FRAUDULENT TRANSFER ACT § 8 cmt. 1, 7A II U.L.A. 352 (1999) ("The person who invokes this defense carries the burden of establishing good faith and the reasonable equivalence of the consideration exchanged."). The burden of proof of this affirmative defense rests with Appellee. A party may move for no-evidence summary judgment only on a claim or defense on which the adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166(a)(i). Appellee may not, therefore, assert good faith as a basis for no-evidence summary judgment.

■ Second, Appellants' summary judgment evidence raised a fact issue on "good faith." Where a transferee is an insider and knows the transferor is insolvent at the time of the transfer, it cannot be a good faith transferee. *Putman v. Stephenson,* 805 S.W.2d 16, 20 (Tex.App.-Dallas 1991, no writ). As noted above, Appellants produced evidence that the transfer was to an insider. Appellants also showed that R & B and Robinson Roofing shared common officers; this raises an inference that Robinson Roofing knew R & B was insolvent at the time of the transfer.

### 3. Value of the Transferred Assets.

■ Appellee argues there is no evidence that the transferred assets had any value. Appellee points to section 24.009(b) of the Texas Business and Commerce Code for the proposition that proof of value is an essential element of a fraudulent transfer claim. TEX. BUS. & COM.CODE ANN. § 24.009(b) (Vernon 2002). We disagree. Section 24.009(b) provides in part:

> [T]o the extent a transfer is voidable in any action by a creditor *under Section 24.008(a)(1)* of this code, the creditor may recover judgment for the value of the asset transferred ... or the amount necessary to satisfy the creditor's claim, whichever is less.

*Id.* § 24.009(b) (emphasis added). Thus the value of transferred assets is an issue only when a creditor seeks relief under section 24.008(a)(1). But avoidance of a transfer under section 24.008(a)(1) is not the only remedy available to a creditor:

> In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in Section 24.009 of this code, may obtain:
>
> (1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the applicable Texas Rules of Civil Procedure and the Civil Practice and Remedies Code relating to ancillary proceedings; or

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(C) any other relief the circumstances may require.

*Id.* § 24.008(a). Under subsections 2 and 3, a creditor may seek attachment of the transferred asset or any other relief the circumstances may require—without proving the value of the transferred asset under § 24.009(a). We hold, therefore, that proof of value is not an essential element of Appellants' fraudulent transfer claim and cannot serve as the basis of a no-evidence summary judgment in this case.

4. Appellants' Status as Creditors.

 Appellee argues there is no evidence that Appellants were creditors of the alleged transferor, R & B, before the transfer. "Creditor" means a person, including a spouse, who has a claim. *Id.* § 24.002(4). "Claim," in turn, means a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. *Id.* § 24.002(3).

Appellants' summary judgment evidence shows that they sued Robinson Roofing Company before it changed its name to R

& B Roofing and filed for bankruptcy. The date of the alleged asset transfer is unclear, but the summary judgment evidence raises at least an inference that the transfer occurred after Appellants sued Robinson Roofing Company. Appellants' summary judgment evidence, therefore, raises a fact issue as to whether they were creditors of R & B at the time of the alleged transfer.

Because Appellants produced summary judgment evidence that raised a genuine issue of material fact on each essential element of their fraudulent transfer claim, a no-evidence summary judgment is not proper in this case. *See Moore,* 981 S.W.2d at 269.

### Traditional Motion

1. Transfer of Goodwill.

 We turn now to the traditional part of Appellee's summary judgment motion. Appellee argues that, as a matter of law, there was no transfer of goodwill from R & B to Appellee. In support of its motion, Appellee filed the affidavit of its vice-president, Bret Barnett. Barnett stated that R & B transferred no assets, including goodwill, to Appellee. But Appellants claim R & B transferred other intangible assets besides goodwill to Appellee. Appellants' summary judgment evidence shows R & B and Appellee shared a similar name and address and the identical phone number, logo and phone book graphics. This evidence raises a fact issue as to whether R & B transferred *some* assets to Appellee. Even if Appellee conclusively disproved the transfer of goodwill, it would not be entitled to summary judgment because Appellants allege the transfer of other intangible assets.

2. Fraudulent Transfer.

Appellee next argues there was not, as a matter of law, any fraudulent transfer of

any nature from R & B to Appellee. As noted in the previous paragraph, Appellants' summary judgment evidence raises a fact issue as to whether assets were transferred from R & B to Appellee. The question, then, is whether Appellee conclusively negated the possibility the transfer was fraudulent.

A transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor. TEX. BUS. & COM.CODE ANN. § 24.005(a). As detailed in our discussion of Appellee's no-evidence motion, the summary judgment evidence raises fact issues as to (a) whether Appellants were creditors of R & B at the time of the alleged transfer, and (b) whether R & B made the alleged transfer with actual intent to hinder, delay, or defraud Appellants. These fact issues preclude summary judgment on the question of whether the alleged transfers were fraudulent.

3. Value of Goodwill.

Finally, Appellee argues it is entitled to summary judgment because the summary judgment evidence conclusively proves the goodwill of R & B had no value at the time of the transfer. For summary judgment evidence, Appellee relies on Appellants' answer to an interrogatory:

> State the exact amount that you claim was the value of the good will which you claim was transferred from R & B Roofing Company to Defendant. . . .

> Answer: Plaintiff does not know, and does not intend to prove the value of such good will.

In our analysis of Appellee's no-evidence motion, we determined that proof of value of a transferred asset is not an essential element of a fraudulent transfer claim. Moreover, Appellants allege the transfer of intangible assets besides goodwill.

Thus even if the summary judgment evidence conclusively proved that R & B's goodwill had no value, Appellee would not be entitled to summary judgment.

### CONCLUSION

We hold that material fact issues preclude summary judgment. We sustain Appellants' sole issue. We reverse the trial court's judgment and remand the cause for further proceedings. *See* TEX.R.APP. P. 43.2(d).