[COMMENT1] 

 

 

 

 

 

                                      COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-04-279-CV

 

 

WILLIAM CHU                                                                     APPELLANT

 

                                                   V.

 

CHONG HUI HONG                                                                 APPELLEE

 

                                              ------------

 

           FROM THE 322ND
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

This
appeal concerns a lawyer, Appellant, who conspired with Appellee=s husband for the purpose, and
with the effect, of cheating Appellee out of her share of the family business,
a donut shop.  The jury found Appellant=s conduct was conspiratorial,
fraudulent, malicious, and violated the Texas Uniform Fraudulent Transfer Act.[1]








The
State Bar=s rules of professional conduct
forbid a lawyer to commit any act that reflects adversely on the lawyer=s honesty, trustworthiness, or
fitness as a lawyer, or to engage in conduct that involves dishonesty, fraud,
deceit, or misrepresentation.  See
Tex. Disciplinary R. Prof=l Conduct 8.04(a) (1), (2), and (3) reprinted
in Tex. Gov=t Code
Ann., tit. 2, subtit.
G app. A (Vernon 2005) (Tex. State Bar
R. art. X, ' 9).  For Appellant to engage in such conduct and, in this appeal, to
attempt to explain it as merely negligence on his part conflicts with the jury=s findings that Appellant=s actions were conspiratorial,
fraudulent, and malicious.  Negligence
may occur when the actor fails to exercise the standard of care that the law
would require of a reasonable man in the circumstances.  Here, however, the jury found Appellant=s conduct was wilful and
fraudulent.  It was not negligent.  After considering the five issues raised by
Appellant, we affirm.

                                            Background








Appellee,
Chong Hui Hong, and her husband, Gyu Chul Kim (Gyu), were married  from 1996 until 1999, when they separated,
stopped living together as husband and wife, and eventually divorced.  While married, they jointly purchased,
owned, and operated a donut shop, for which they filed an Assumed Name
Certificate in the records of the Tarrant County Clerk.  In 1998, they both signed an agreement to
sell the donut shop to buyers whose attorney was Appellant, William Chu.

The
original agreement required the buyers to pay Appellee and her husband, Gyu, a
total price of $210,000 for the donut shop, including a $20,000 down
payment.  On November 6, 1998, the
buyers gave Appellee and her husband a check for the $20,000 down payment.  On November 18, 1998, before Appellee and her
husband, Gyu, cashed the check, the agreement was  modified in writing to reduce the total sales price to $180,000.
The modification specified the down payment as the $20,000 already paid to
Appellee and her husband, Gyu.  Finally,
the buyers ordered payment of the $20,000 check stopped and refused to pay
anything.

Appellee
notified both the buyers and her husband, Gyu, that Appellee would not close
the sale of the donut shop because she considered their agreement had become
void.  In response, the buyers= attorney, Appellant, William Chu,
wrote a letter to Appellee and her husband, Gyu, demanding that either they
close under the terms of the modified agreement or face litigation.  Appellee still refused to close.








Without
Appellee=s knowledge, authority, or
consent, her husband, Gyu, went to Appellant=s office and, with Appellant=s knowledge of the circumstances, signed another
amendment to the agreement stating for the first time that Gyu was sole owner
of the donut shop.  Gyu then signed documents
prepared by Appellant=s office staff pursuant to
Appellant=s instruction that purported to
convey the entire title and possession of the donut shop to the buyers.  Appellant testified that when Gyu was in his
office, Appellant was aware that Appellee had an ownership interest in the
donut shop.  Appellant=s only explanation for not
contacting Appellee and asking that she furnish him her power of attorney (that
could have authorized Gyu to act for her in the sale) was: AI wasn=t requested to get one.@ 
Appellee first learned of the sale from Gyu to the buyers when she went
to work at the donut shop on February 24, 1999, discovered the buyers in
possession, and was ordered to leave the premises.  After the sale of the donut shop, Gyu sent the proceeds by wire
transfer to Korea.  Soon thereafter, Gyu
returned to Korea.








Appellee=s suit was filed March 16, 1999,
only against Gyu and one of the buyers of the donut shop seeking a declaratory
judgment finding that the agreement between Gyu and the buyers was void.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 37.004 (Vernon 2002).  Appellee also
sought damages for conversion and Gyu=s fraudulent conveyance of Appellee=s property.  On March 18, 1999, Gyu filed his original
petition seeking a divorce from Appellee. 
Appellee=s final pleading before trial
asked that she be divorced from Gyu and that she be awarded a division of
community property.  Appellee also sued
Appellant for fraudulently transferring the donut shop and for conspiring with
Gyu to convert the business to the buyers. 
The suits were consolidated on March 31, 1999.  Appellee=s pleading alleged that she sought
the remedies and relief authorized by section 24.008 of the business and commerce
code.

The
jury found that:  (a) Gyu fraudulently
transferred the donut shop to the buyers; (b) Appellant, Gyu, and the buyers
converted the donut shop that belonged to Appellee; (c) Gyu did not comply with
his fiduciary duties to Appellee; (d) Appellant and the buyers were part of a
conspiracy that damaged Appellee; and (e) clear and convincing evidence
established that the harm to Appellee resulted from the malice or fraud of
Appellant, Gyu, and the buyers. 

Further,
the jury found that Appellee suffered actual damages of $140,000 as the value
of the donut shop, plus $190,000 for lost profits during the time she was
denied access to, possession, and ownership of the donut shop.  The jury also found that Appellant acted
toward Appellee with malice or fraud and awarded Appellee $1,500,000 punitive
damages for Appellant=s conduct.








The
jury awarded Appellee attorney=s fees of $65,000 through trial, $10,000 for appeal, and another
$10,000 for appeal, if any, to the supreme court.  The trial court=s judgment does not condition the award of appellate attorney=s fees upon Appellee=s success on appeal, and Appellant
does not complain of that feature. 

The
trial court=s judgment grants a divorce to
Appellee and recites that Appellee is entitled to judgment against Appellant
based on the jury=s verdict.  The jury found that Appellant, Gyu, and the
buyers conspired to fraudulently transfer the donut shop to the buyers, which
constituted fraud and malice against Appellee. 
The judgment awards damages in accordance with the jury=s verdict.  The trial court found that the purported
sale of the donut shop was void and ordered the buyers divested of ownership
and possession.  The court awarded
possession of the donut shop to Appellee, effective at 1:30 p.m. on March 13,
2004.  Finally, the judgment awarded Appellee
authority to levy against the assets of the donut shop to enforce the judgment
and recover assets.  Only Appellant
appeals the trial court=s judgment.

                                      Appellant=s First Issue

Appellant=s first issue asks whether the
Uniform Fraudulent Transfer Act creates personal liability for Appellant=s conduct.  We are convinced that it does.








The
question of whether a debtor has conveyed property with the intent to defraud
creditors is ordinarily a question for the trier of fact.  Flores v. Robinson Roofing & Constr.
Co., 161 S.W.3d 750, 754-55 (Tex. App.CFort Worth 2005, pet. denied) (op. on reh=g).  A fraudulent transfer occurs when a debtor makes a transfer with
intent to hinder, delay, or defraud his creditors by placing the debtor=s property beyond the creditor=s reach.  Nobles v. Marcus, 533 S.W.2d 923, 925 (Tex. 1976).  The purpose of the Uniform Fraudulent
Transfer Act is to prevent transfers of property with intent to defraud
creditors.  Flores,  161 S.W.3d at 754.  Intent is a fact question uniquely within
the realm of the trier of fact because it depends upon the credibility of the
witnesses and the weight to be given to their testimony.  Spoljaric v. Percival Tours, Inc.,
708 S.W.2d 432, 434 (Tex. 1986).








The
relationship between a husband and wife creates a fiduciary relationship so
that the spouses are bound by a fiduciary duty when dealing with the community
estate.  Sw. Tex. Pathology Assocs.
v. Roosth, 27 S.W.3d 204, 208 (Tex. App.CSan Antonio 2000, pet. dism=d w.o.j.); Connell v. Connell, 889 S.W.2d
534, 541 (Tex. App.CSan Antonio 1994, writ
denied).  Moreover, unfairly disposing
of the other spouse=s community property results in
the presumption of constructive fraud and may impose liability on a third
party, such as Appellant, who knowingly participates in the breach of the
fiduciary duty.  See Connell, 889
S.W.2d at 541.  Whether the
conveyance was made with intent to defraud creditors or whether the third party
had knowledge or notice of such intent are fact questions for the jury.  See id. at 542.

For
purposes of the Uniform Fraudulent Transfer Act, an Ainsider@ is an entity (Appellant) whose
close relationship with the debtor (Gyu) subjects any transactions made between
the debtor and the insider to heavy scrutiny. 
Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd., 80 S.W.3d
601, 609 (Tex. App.CHouston [1st Dist.] 2002, no
pet.).

First,
we turn to the definitions contained in the Uniform Fraudulent Transfer
Act.  ACreditor@ means Aa person . . . who has a claim,@ such as Appellee. 
AClaim@ means a Aright to property.@ 
ADebtor@ means Aa person who is liable on a claim,@ such as Appellant.  ATransfer@ means Aevery mode of parting with an
interest in an asset,@ such as the conveyance of
Appellee=s share of community property
under the guise that Appellee has no ownership rights in it, or that it is
exclusively owned by someone else.  AProperty@ means Aanything that may be the subject
of ownership.@ 
See Tex. Bus. & Com.
Code Ann. ' 24.002
(Vernon 2002).








The
jury was instructed by the court=s charge that a debtor=s transfer is fraudulent as to a creditor, whether the
creditor=s claim arose within a reasonable
time before or after the transfer, provided the transfer is done with actual
intent to hinder, delay, or defraud the creditor.  The court=s charge also informed jurors that
the term Aconvert@ or Aconversion@ as used in jury question No. 2 means taking of the
property without Appellee=s authorization or consent.  In answering question No. 2, the jury
unanimously found from the evidence that Appellant converted property belonging
to Appellee without her consent.

In
other answers to jury questions, the jury unanimously found from the evidence
(question No. 4) that Appellant knowingly participated, aided, or assisted in
the breach of fiduciary duty owed Appellee by her husband.  The jury also found from the evidence
(question No. 5) that Appellant was part of a conspiracy with the other
defendants that damaged Appellee.

The
charge included an instruction with question No. 5 that to be part of a
conspiracy, Appellant Amust have had knowledge of, agreed
to, and intended a common objective or course of action that resulted in damage
to [Appellee].@ 
Further, the charge instructed that Aa civil conspiracy is a combination of two or more persons
to accomplish an unlawful purpose by unlawful means@ and that to be liable for
conspiracy, it must be shown that Appellant intended to cause the injury or was
aware of the harm likely to result from the wrongful conduct.








In
question No. 9, the jury found from clear and convincing evidence (that
produced a firm belief or conviction of the truth of the allegations against
Appellant) that Appellant=s conduct toward Appellee resulted
from malice or fraud.  Malice was
defined for the jury as either Appellant=s specific intent to cause substantial injury to Appellee,
or Appellant=s act or omission that from his
standpoint at the time involved an extreme degree of risk known to him and with
which he nevertheless proceeded with conscious indifference to the rights,
safety, or welfare of others.








Section
24.005 of the Uniform Fraudulent Transfer Act contains a non-exclusive list of
facts and circumstances, known as the badges of fraud, that may be considered
in determining fraudulent intent.  See
Tex. Bus. & Com. Code Ann. ' 24.005(b); Flores, 161 S.W.3d at 755.  The evidence clearly shows and convinced the jury that Gyu, a
debtor, aided by Appellant, a third party, made the transfer of community
property, the donut shop, with actual intent to hinder, delay, or defraud a
creditor, Appellee.  The evidence also
shows that soon after the transfer of ownership in the donut shop, Gyu sent the
proceeds of the sale to Korea and actually went to Korea himself.  Moreover, the evidence shows that Appellant
knew from the start of their relationship that Gyu was not the only owner of
the donut shop, but Appellant nevertheless conspired to transfer the business
from Gyu alone to the buyers.  As a
conspirator, the evidence shows that Appellant was present on February 23, 1999
when the transaction between Gyu and the buyers was completed in Appellant=s office.  At that time, the buyers tendered the agreed
upon sales price and Gyu signed a bill of sale.  The bill of sale states that it was executed by Gyu on December
1, 1998, and the notary certification lists the same date.  The notary was an employee in Appellant=s office.  Although Appellant denied  having knowledge that his employee backdated
the bill of sale, Appellant admitted that the December 1, 1998 dated listed on
the bill of sale, notarized by his employee, was incorrect and the date should
have been listed as February 23, 1999.








The
evidence shows that in the transfer of the donut shop, Appellant acted as an Ainsider@ who, because of his close
relationship to Gyu in their conspiratorial purpose of defrauding Appellee,
will have the transfer subjected to heavy scrutiny.  See Tel. Equip. Network, Inc., 80 S.W.3d at 609.  Here, the jury found from the evidence that
Appellant and Gyu had joined forces and schemed to divest Appellee of her share
of the business.  Appellant=s own conduct, including the
failure to request a power of attorney from Appellee, made himself an Ainsider@ in that fraudulent enterprise
with Gyu.  The principal factors in
determining insider status are the closeness of the relationship between the
transferees (buyers) of the property, their attorney (Appellant), and the debtor
(Gyu).  Id.  An attorney, such as Appellant, is liable
for knowingly committing a fraudulent act that injures someone such as
Appellee, or for knowingly entering into a conspiracy to defraud someone such
as Appellee.  See Likover v.
Sunflower Terrace II, Ltd., 696 S.W.2d 468, 472 (Tex. App.CHouston [1st Dist.] 1985, no
pet.).

Moreover,
the provisions of the Uniform Fraudulent Transfer Act do not displace
principles of equity or the law relating to fraud, and those principles, as
well as the law, supplement its provisions. 
See Tex. Bus. & Com.
Code Ann. ' 24.011
(Vernon 2002).  Because we answer the question raised by Appellant=s first issue in the affirmative,
that on the facts the jury found in this case the Uniform Fraudulent Transfer
Act does create personal liability for Appellant=s conduct, we overrule his first issue.  See Tex.
Bus. & Com. Code Ann. '' 24.002, 24.005, 24.006, 24.008, 24.010 (Vernon 2002).

                            Appellant=s Punitive Damages Issues

Appellant=s next three issues ask whether
the Uniform Fraudulent Transfer Act authorizes an award of punitive damages and
whether there is legally and factually sufficient, clear and convincing
evidence of actual malice or fraud to support the award of punitive damages and
whether the size of the punitive damages awarded is so constitutionally
excessive, or so against the great weight and preponderance of the evidence, as
to be manifestly unjust.  We will
discuss the three issues as one. 








To
be entitled to an award of punitive damages, Appellee had to prove by clear and
convincing evidence that the harm with respect to which Appellee seeks recovery
of exemplary damages resulted from fraud or malice committed by Appellant.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 41.003 (Vernon Supp. 2004-05).  Clear and convincing evidence is defined as that measure or
degree of proof which will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be
established.  Transp. Ins. Co. v.
Moriel, 879 S.W.2d 10, 31 (Tex. 1994). 
This intermediate standard falls between the preponderance standard of
civil proceedings and the reasonable doubt standard of criminal
proceedings.  In re G.M., 596
S.W.2d 846, 847 (Tex. 1980). 

The
Texas Supreme Court has recently reiterated the appropriate scope of appellate
review when the burden of proof at trial was clear and convincing evidence and
the appellant on appeal challenges the sufficiency of a fact finding:








In
a legal sufficiency review, a court should look at all the evidence in the
light most favorable to the finding to determine whether a reasonable trier of
fact could have formed a firm belief or conviction that its finding was true.
To give appropriate deference to the factfinder's conclusions and the role of a
court conducting a legal sufficiency review, looking at the evidence in the
light most favorable to the judgment means that a reviewing court must assume
that the factfinder resolved disputed facts in favor of its finding if a
reasonable factfinder could do so.  A
corollary to this requirement is that a court should disregard all evidence
that a reasonable factfinder could have disbelieved or found to have been
incredible.  This does not mean that a
court must disregard all evidence that does not support the finding.  Disregarding undisputed facts that do not
support the finding could skew the analysis of whether there is clear and
convincing evidence.

 

If,
after conducting its legal sufficiency review of the record evidence, a court
determines that no reasonable factfinder could form a firm belief or conviction
that the matter that must be proven is true, then that court must conclude that
the evidence is legally insufficient.

 

Sw. Bell
Tel. Co. v. Garza,
164 S.W.3d 607, 627 (Tex. 2004).

Appellant
argues that the evidence the jury heard of his misconduct shows only that he
was guilty of professional negligence, nothing more.  We disagree and can only conclude that his misconduct shows that,
as the jury found, Appellant clearly had a fraudulent and malicious intent to
act as the catalyst for defrauding Appellee by acting with Gyu and the buyers
of the donut shop to deprive Appellee of her property. Appellant=s misconduct was shown fully by
the evidence and sufficiently supports the $1,500,000 punitive damages the jury
awarded as punishment and deterrence. 
The punitive damages are not unconstitutionally excessive because they
are reasonably proportionate to the actual damages the jury found before any
reduction or remittitur was made.  Sw.
Inv. Co. v. Neely, 452 S.W.2d 705, 708 (Tex. 1970).








Based
upon the evidence, the jury awarded Appellee actual damages of $330,000 and
punitive damages of $1,500,000.  The
trial court ordered that Appellee is entitled to immediate possession of the
donut shop and thus remitted $140,000 as the jury=s finding of the value of the business.  The court entered judgment against Appellant
for $190,000 actual damages plus prejudgment interest of $57,000 on that
amount.  Because of Appellant=s misconduct, and applying the
appropriate standard of review, we do not find the punitive damages of
$1,500,000 to be excessive, or against the great weight and preponderance of
the evidence, or manifestly unjust.  We
hold there was clear and convincing evidence to support the punitive damages
award in favor of Appellee.  We overrule
each of Appellant=s challenges to, and concerns
about, the punitive damages that are included in the second, third, and fourth
issues.

                                   The
Attorney=s Fees Issue








In
his fifth issue, Appellant asks whether awarding attorney=s fees in this case is
appropriate.  In other words, he
challenges Appellee=s entitlement to attorney=s fees, not the amount of
fees actually awarded.  We conclude that
the only applicable provision for attorney=s fees in this case is that of section 24.013 of the Uniform Fraudulent Transfer Act
that enables the trial court to award costs and reasonable attorney=s fees as are equitable and
just.  See Tex. Bus. & Com. Code Ann. ' 24.013 (Athe court may award costs and
reasonable attorney=s fees as are equitable and just@).  That provision of the statute gave the trial court the sound
discretion to award the attorney=s fees to Appellee based upon the evidence the
court heard.  See Bocquet v. Herring,
972 S.W.2d 19, 20-21 (Tex. 1998) (reviewing similar statutes that provide a court
Amay award@ attorney=s fees).  The fees are equitable and just. 

This
case is totally unlike Thomas v. Casale, 924 S.W.2d 433 (Tex. App.C Fort Worth 1996, writ denied),
where a trial court made neither an actual nor an implied finding of fact nor a
conclusion of law that the Uniform Fraudulent Transfer Act had any application
to that case, because of an absence of evidence.  Id. at 437.  We
overrule Appellant=s fifth issue.

                                             Conclusion

Having
overruled all of Appellant=s issues after careful consideration of each one, we affirm the
judgment of the trial court.

 

 

DIXON W.
HOLMAN

JUSTICE

 

PANEL B:  LIVINGSTON, HOLMAN, and GARDNER, JJ.

 

GARDNER, J. DISSENTS

 

DELIVERED:  October 20, 2005

 

 

 

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-04-279-CV

 

 

WILLIAM
CHU                                                                     APPELLANT

 

                                                   V.

 

CHONG
HUI HONG                                                                 APPELLEE

 

                                              ------------

 

           FROM THE 322ND DISTRICT COURT OF
TARRANT COUNTY

 

                                              ------------

 

                                   DISSENTING OPINION

 

                                              ------------








I
disagree that the Texas Uniform Fraudulent Transfer Act (TUFTA) creates
personal liability of Appellant for the damages and attorney=s fees assessed against him.  I share the majority=s reaction to Appellant=s egregious misconduct as a
lawyer.  I believe he should be referred
to the grievance committee.  But I
cannot agree that Appellee was entitled to maintain an independent cause of
action against him under that Act in seeking to void the fraudulent transfer of
community property and in seeking damages in the context of her divorce.  By upholding liability of Appellant under
TUFTA, I believe the majority clouds the remedies applicable to spouses on
divorce as well as the scope of TUFTA. 
I also believe the majority opinion conflicts with current Texas law.

The
majority affirms based upon the jury=s finding that Appellant conspired with the buyers and
Appellee=s husband to fraudulently transfer
the donut shop.  But the majority does
not address an essential prerequisite for a civil conspiracy.  Liability for civil conspiracy requires
participation in an underlying tort for which the plaintiff seeks to hold at
least one of the named defendants liable.[1]  The underlying tort Appellee relies on
is her husband=s violation of TUFTA by
fraudulently transferring the donut shop business to Appellant=s clients, as found by the
jury.  If Appellee had no cause of action
against her husband under that Act, then Appellant cannot be liable for
conspiracy to violate that Act.  The
preliminary question we must answer, then, is whether Appellee had a cause of
action against her husband under TUFTA.








The
purpose of TUFTA is to provide a statutory cause of action through which
creditors may seek recourse for fraudulent transfers of assets by debtors.[2]  The majority accepts Appellee=s argument that, as a spouse, she is a Acreditor@ under TUFTA as to her husband=s fraudulent transfer, concluding
that she has a valid, underlying tort cause of action against her husband under
that Act.[3]  I disagree.  Section
24.002(4) of TUFTA includes Aa spouse@ in the definition of the term Acreditor,@ but it is a logical fallacy to
conclude that all spouses are therefore creditors within the meaning of the
Act.  There are at least two reasons why
that cannot be so.  First, that is not
what the section says.  Section 24.002
provides the following definitions: 

(3)    AClaim@ means a right to payment or
property . . .

 

 








(4)    ACreditor@ means a person, including a
spouse, . . . who has a claim.

 

. . . . 

 

(6)    ADebtor@ means a person who is liable on a
claim.[4] 

Section
24.005(a), the operative section of TUFTA, states:

A transfer made . . . by a debtor
is fraudulent as to a creditor, whether the creditor=s claim arose before or within a
reasonable time after the transfer was made or the obligation was
incurred, if the debtor made the transfer or incurred the obligation:

 

(1)    with actual intent to hinder, delay, or defraud any creditor or
debtor[.][5]








The
transfer fraudulently deprived Appellee of her ownership right in the donut
shop.  But nothing in the briefs or
record suggests that Appellee had a Aclaim@ against her husband either before or within a reasonable time after
his transfer of the donut shop apart from the fraudulent transfer.  Without such a claim, Appellee is not a Acreditor,@ even though she is a Aspouse.@[6] 
Likewise, her husband was not a debtor apart from the transfer.  The language of Section 24.005(a)
contemplates a claim that existed Abefore@ or Awithin a reasonable time after@ and apart from the fraudulent
transfer, not a claim created by the transfer itself.  Absent evidence of a claim that either pre-existed or came into
existence shortly after the transfer, I would hold that Appellee had no
statutory cause of action as a Acreditor@ against her husband within TUFTA.









In addition, I have grave doubts
that the majority=s holding can be squared with
current law.  Appellee could not become
a Acreditor@ as a result of the fraudulent
transfer because the donut shop was community property.  The injury resulting from the fraudulent
transfer was to the community estate, not to Appellee personally.  In Schlueter v. Schlueter, the
Supreme Court of Texas held that a spouse has no independent cause of action
for actual or exemplary damages for fraud in disposing of community assets.[7]  Instead, the concept is one of Afraud on the community,@ the essential character of which
is Aa deprivation of community assets
as opposed to a tort committed against a person or his or her separate
property.@[8] 
The trial court may consider the wrong in awarding a disproportionate
division of the community estate to the injured spouse to compensate for the
community property wrongfully expended, transferred, or dissipated.[9]  But TUFTA does not define Acreditor@ to include the community estate
on divorce. 













Holding that a spouse has an
independent cause of action under TUFTA for a fraudulent transfer of community
property seems to conflict with Schlueter=s holding that no independent cause of action for a
fraudulent transfer of community property exists.  As the supreme court in Schlueter explained in describing
the remedies of a spouse for fraud on the community, the trial court may
consider actual or constructive fraud by one spouse in disposing of community
property when it divides the community estate.[10]  The claim for fraud on the community Ais a means to an end . . . to
obtain a greater share of the community estate, in order to compensate the
wronged spouse for his or her lost interest in the community estate.@[11] 
As additional remedies for fraud on the community, the court may allow
the wife to establish her ownership right in specific property fraudulently
transferred as against third party possessors.[12]  The court may also award a money judgment
from one spouse to the other to achieve an equitable division up to the
specific value of the lost community property.[13]  But because the amount of a money judgment
is directly referable to the specific value of the lost community property, the
award will never exceed the value of the community estate.[14] 
Exemplary damages may not be awarded for fraud on the community estate.[15]








TUFTA preceded Schlueter, and
provides remedies that are similar but broader, including allowance of attorney=s fees and Aany other relief the circumstances
may require,@ which may include actual and
punitive damages.[16]  However, I believe that, unless and until
the supreme court says differently, Schlueter precludes a holding that
TUFTA provides an independent tort cause of action for Appellee against her
husband under these facts.[17]








In
addition to finding a fraudulent transfer in violation of TUFTA by the husband,
the jury also found that the husband converted Appellee=s ownership interest in the donut
shop and breached his fiduciary duties to Appellee. However, claims of
constructive fraud, breach of fiduciary duty, conversion, or waste in disposing
of the community estate, like claims of fraud in transferring community
property, cannot be brought as independent torts in a divorce proceeding, as
those claims are also subsumed within the spouse=s claim of Afraud on the community@ to be considered in the division of the community estate.[18] 
Thus, those additional jury findings against Appellee=s husband do not establish an
independent tort committed against Appellee, without which she has no action
for conspiracy by Appellant.[19]








I
would sustain Appellant=s first issue and hold that the
trial court erred in rendering judgment against Appellant for personal
liability based upon TUFTA.  It appears
that the trial court reached the right result as to the husband and buyers in
setting aside the transfer and awarding Appellee the business as a part of the
property division in the divorce decree, even though it was for the wrong
reason.[20]  Those parties have not appealed, and
Appellant does not challenge the assessment of actual damages against him for
the lost profits nor does he challenge the award of punitive damages other than
to argue that it was excessive.  In Schlueter,
the supreme court expressly declined to consider whether and to what extent a
spouse may maintain an action against a third party who participated or
conspired with the other spouse to commit a fraud on the community.[21] 
I believe that the issue is sufficiently raised here, and that we should
proceed to consider whether all or some portion of the judgment may be upheld
against Appellant based upon conspiracy to commit fraud on the community, or,
alternatively, based upon the separate jury finding against him of common law
conversion.

 

ANNE GARDNER

JUSTICE

 











[1]Tex. Bus.
& Com. Code Ann. ' 24.005(a)(1) (Vernon 2002).





[1]Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996);
Cmty. Initiatives, Inc. v. Chase Bank of Tex., 153 S.W.3d 270, 285 (Tex.
App.CEl Paso 2004, no pet.). 





[2]Blackthorne v. Bellush, 61 S.W.3d 439, 443 (Tex. App.CSan Antonio 2001, no pet.); see
also Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd., 80 S.W.3d 601,
607 (Tex. App.CHouston [1st Dist.] 2002, no pet.)
(noting Act designed to prevent transfers of property by debtor who intends to
defraud creditors by placing assets beyond their reach).  





[3]Appellee relies upon Thomas v.
Casale, 924 S.W.2d 433 (Tex. App.CFort Worth 1996, writ denied).  In that case, as noted by the majority on the instant case, this
court did not hold that TUFTA applied but reversed on the basis that the
judgment could not be upheld under Section 3.57 of the Texas Family Code, which
enables a court to void a community property transfer made by a spouse after a
divorce petition is filed, provided the spouse who asks the court to grant that
remedy meets the burden of proving that the transferee had notice of the transferor=s intent to injure the other
spouse=s rights.  Id.; see Act of May 4, 1979, 66th
Leg., R.S., ch. 193, ' 1, 1979 Tex. Gen. Laws 421, 421, recodified
by Act of Apr. 3, 1997, 75th Leg., R.S., ch. 7, ' 1, 1997 Tex. Gen. Laws 8, 32-33
(current version at Tex. Fam. Code Ann. ' 6.707 (Vernon 1998)).  





[4]Tex. Bus.
& Com. Code Ann. ' 24.002(3), (4), (6) (Vernon 2002)
(emphasis added).





[5]Id. ' 24.005(a) (emphasis added).  





[6]See, e.g., Mladenka v. Mladenka, 130
S.W.3d 397, 401-02 (Tex. App.CHouston [14th Dist.] 2004, no pet.) (affirming judgment setting aside
conveyance by ex-husband to brother of all his non exempt assets as fraudulent
conveyance under TUFTA in post judgment enforcement action by wife as judgment
creditor); Goodwin v. Goodwin, 451 S.W.2d 532, 534 (Tex. Civ. App.CAmarillo 1970) (holding that wife
with divorce judgment granting lien on airplane that had been part of community
estate was creditor entitled to set aside conveyance by husband pending
divorce), rev=d on other grounds, 456 S.W.2d 885 (Tex. 1970).  





[7]Schlueter v. Schlueter, 975 S.W.2d 584, 585-86, 589-90
(Tex. 1998); see also Mayes v. Stewart, 11 S.W.3d 440, 447-48
(Tex. App.CHouston [14th Dist.] 2000, pet.
denied); In re Marriage of Moore, 890 S.W.2d 821, 827 (Tex. App.CAmarillo 1994, no writ); Belz
v. Belz, 667 S.W.2d 240, 247 (Tex. App.CDallas 1984, writ ref=d n.r.e.).





[8]Schlueter, 975 S.W.2d at 589.





[9]Id. at 588 (citing Belz, 667
S.W.2d at 247).





[10]Id. at 588-89.





[11]Id. at 588 (quoting Belz, 667
S.W.2d at 246-47).





[12]See Cohrs v. Scott, 161 Tex. 111, 338 S.W.2d 127,
132-133 (1960) (recognizing and citing prior cases allowing recovery against Athird party possessor@ and establishing resulting trusts
in favor of dispossessed spouse in community property fraudulently
transferred); Ginsburg v. Chernoff/Silver & Assocs., Inc., 137
S.W.3d 231, 237 (Tex. App.CHouston [1st Dist.] 2004, no pet.); cf. J. Michael Putman, M.D.P.A.
Money Purchase Pension Plan v. Stephenson, 805 S.W.2d 16, 17-19 (Tex. App.CDallas 1991, no writ) (setting
aside deed to third party Ainsider@ by husband pledging community
interest in real estate as collateral for existing note). 





[13]Schlueter, 975 S.W.2d at 588.





[14]Lucy v. Lucy, 162 S.W.3d 770, 777 (Tex. App.BEl Paso 2005, no pet.) (citing Schlueter,
975 S.W.2d at 588).





[15]Schlueter, 975 S.W.2d at 589; see also In
re Marriage of Moore, 890 S.W.2d at 825-29.





[16]Tex. Bus.
& Com. Code Ann. ' 24.008(a), 24.009(b) (Vernon
2002) (allowing recovery of monetary damages equal to value of asset or amount
of debt, whichever is less).  But see
Flores v. Robinson Roofing & Constr. Co., 161 S.W.3d 750, 756-57 (Tex.
App.CFort Worth 2005, pet. denied) (op.
on reh=g) (applying catchall provision in
Section 24.008(a) for Aany other relief@ to allow remedies other than
value of asset transferred); Airflow Houston, Inc. v. Theriot, 849
S.W.2d 928, 933-934 (Tex. App.BHouston [1st Dist.] 1993, no writ) (allowing recovery of full amount
of debt owed in excess of value of asset under catchall provision). Courts are
split on whether punitive damages may be recovered under various versions of
the Uniform Fraudulent Transfer Act.  See
DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc.,
384 F.3d 338, 354-55 (7th Cir. 2004) (certifying question to Indiana Supreme
Court and listing jurisdictions allowing and disallowing punitive damages under
Act). 





[17]See Lubbock County v. Trammel=s Lubbock Bail Bonds, 80 S.W.3d 580, 585 (Tex. 2002)
(explaining that once the supreme court announces a proposition of law, the
decision is considered binding precedent, and it is not for courts of appeals
to abrogate or modify such precedent).





[18]Schlueter, 975 S.W.2d at 589 (citing In
re Marriage of Moore, 890 S.W.2d at 829); see also Lucy, 162 S.W.3d
at 777-78 (holding waste, mismanagement, and breach of fiduciary duty in
connection with community funds constituted fraud on community, not separate
causes of action of wife); Loaiza v. Loaiza, 130 S.W.3d 894, 902 (Tex.
App.CFort Worth 2004, no pet.) (holding
breach of fiduciary duty and constructive fraud by husband in making
expenditures for girlfriend did not constitute independent causes of action,
precluding damages and exemplary damages as matter of law); Harper v. Harper,
8 S.W.3d 782, 784 (Tex. App.CFort Worth 1999, pet. denied) (holding wife could not recover damages
for separate cause of action in divorce suit for fraud against husband and his
future wife). 





[19]See Tilton, 925 S.W.2d at 681; Cmty.
Initiatives, Inc., 153 S.W.3d at 285. 





[20]See Lucy, 162 S.W.3d at 777-78
(upholding mislabeling of award such that reversal was not required and
upholding disproportionate division of community estate based on fraud on the
community even through trial court stated award was reimbursement).





[21]Schlueter, 975 S.W.2d at 590.















 [COMMENT1]

MAJORITY OPINION BY JUSTICE HOLMAN, DISSENT BY JUSTICE
GARDNER