**J. MICHAEL PUTMAN, M.D.P.A. MONEY PURCHASE PENSION PLAN, Appellant,**

v.

**Dorothy Griffith STEPHENSON, Appellee.**

**No. 05–90–00114–CV.**

Court of Appeals of Texas, Dallas.

Feb. 1, 1991.

Roger Albright, Dallas, for appellant.

Frank H. Moore, Ellen Abbott, Dallas, for appellee.

Before WHITHAM, LAGARDE and KINKEADE, JJ.

## OPINION

LAGARDE, Justice.

The J. Michael Putman, M.D.P.A. Money Purchase Pension Plan (Pension Plan) appeals from a judgment setting aside a quitclaim deed as void under the Uniform Fraudulent Transfer Act (UFTA). In three points of error, the Pension Plan argues that: (1) the trial court erred in finding that J. Michael Putman, as the administrator of the Pension Plan, was an insider under UFTA; (2) there is insufficient evidence to set aside the conveyance under UFTA because the Pension Plan is not an insider; and (3) assuming the conveyance should be set aside, the trial court erred in awarding all of the real property to Dorothy Griffith Stephenson free of the outstanding obligation owed to the Pension Plan. We overrule all of the Pension Plan's points of error and affirm the judgment of the trial court.

Dorothy Griffith Stephenson (Wife) and Thomas Lee Stephenson (Husband) were married on June 4, 1977. J. Michael Putman (Putman) was Wife's personal physician and a close friend of both Husband and Wife. In 1981, Husband and Putman purchased an undivided one-sixth interest in a piece of real property in Kaufman County, Texas. The deed of trust reflected that both Husband and Putman were married men.

Plagued with financial difficulties, Husband obtained a $10,000 loan from Putman through the Pension Plan on January 27, 1988. In return for the $10,000 check written to Husband from the Pension Plan, Husband executed a promissory note in which he agreed to pledge ten acres of the Kaufman County land. Two days later, on January 29, 1988, Wife had a doctor's appointment with Putman. During this appointment, Wife discussed with Putman the financial difficulties she and Husband were experiencing. Putman did not tell Wife about the $10,000 loan he made to Husband just two days earlier. Wife had no knowledge of this loan. In April or May of 1988, Wife contacted Putman, informed him of how far she and Husband were behind on their bills, and asked him if he would buy their interest in the Kaufman County property. Again, Putman made no mention to Wife of the $10,000 loan and Husband's agreement to pledge ten acres of the property.

Wife filed for divorce in May of 1988. On September 1, 1988, Putman, through

the Pension Plan, loaned Husband an additional $8,700. Husband signed a new promissory note on the same day in the principal amount of $18,700 which was to be paid within sixty days. In an exhibit attached to the promissory note, Husband agreed to pledge "his undivided 20 acres" in the property as collateral for the note. Wife likewise had no knowledge of this loan. Unable to pay the note when due, Husband, again without Wife's knowledge, executed a quitclaim deed of his interest in the property to the Pension Plan on November 1, 1988.

In January of 1989, Wife finally learned of the loans from the Pension Plan to Husband. Through amended pleadings, Wife named the Pension Plan as a third party respondent in her divorce action and sought to have the quitclaim deed set aside. The trial court found that the conveyance of the property was fraudulent as to Wife and set aside the quitclaim deed as void.

At the Pension Plan's request, the trial court filed findings of fact and conclusions of law. In its first point, the Pension Plan complains that the trial court erred in finding that Putman, the Pension Plan's administrator, was an insider within the meaning of UFTA. In its brief, the Pension Plan states that the trial court relied upon section 24.006(b) of UFTA in setting aside the quitclaim deed. However, in the decree of divorce, the trial court merely states that "pursuant to the Uniform Fraudulent Transfer Act, Sections 24.001 through Sections 24.013 of the Business and Commerce Code" the conveyance of the property was fraudulent and orders that the quitclaim deed be set aside.

■ According to the Pension Plan, the trial court erred in finding that Putman was an insider because he does not come within UFTA's definition of insider. UFTA defines insider as follows:

(7) "Insider" *includes:*

(A) if the debtor is an individual:

(i) a relative of the debtor or of a general partner of the debtor;

(ii) a partnership in which the debtor is a general partner;

(iii) a general partner in a partnership described in Subparagraph (ii) of this paragraph; or

(iv) a corporation of which the debtor is a director, officer, or person in control.

TEX.BUS. & COM.CODE ANN. § 24.002 (Vernon 1986) (emphasis added). The Pension Plan argues that Putman is not an insider because he does not fit within the definition of insider under UFTA. We conclude that the Pension Plan reads this definition too narrowly.

■ With respect to the term "include," the Code Construction Act states:

(13) "Includes" and "including" are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded.

TEX.GOV'T CODE ANN. § 311.005(13) (Vernon Supp.1991). The Code Construction Act applies to each code and amendment of a code or code provision enacted by the sixtieth or any subsequent legislature. TEX.GOV'T CODE ANN. § 311.002(1) (Vernon 1988). UFTA is found in chapter twenty-four of the Texas Business and Commerce Code. In 1987, UFTA was amended by the seventieth legislature. The provisions of the Code Construction Act apply to UFTA. Thus, we conclude that by stating "[I]nsider includes:", the drafters of UFTA did not intend to limit an insider to the four listed subjects. Rather, the drafters provided the list for purposes of exemplification.

A review of the evidence reveals that Putman had a close personal relationship with both Husband and Wife. Both families engaged in social activities together, such as hunting. Putman also maintained a business relationship with both Husband and Wife. Putman was Wife's personal physician and he delivered the two children of Husband and Wife. As noted earlier, Wife discussed the financial difficulties she and Husband were experiencing during her doctor's appointment with Putman. She also asked Putman to help her convince Husband to seek treatment for his alcoholism. Putman and Husband entered into

several business deals together. For example, they entered into a hunting lease together, they jointly purchased the property in question and discussed the possibility of growing hay on this property, and they discussed investing in a restaurant together.

■ In light of his personal knowledge of the business, financial, and personal affairs between Husband and Wife, we conclude that Putman was an insider under UFTA with respect to the conveyance of the Kaufman County property. Putman is the administrator of the Pension Plan. At trial, Putman testified that he was solely in charge of the Pension Plan. Clearly, Putman had an insider's knowledge of the affairs of the Pension Plan. *See Miller v. Miller*, 700 S.W.2d 941, 945 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Any action taken in the name of the Pension Plan is handled through Putman, its sole administrator. Thus, we hold that if an action taken in the name of a pension plan is fraudulent as to a creditor and the pension plan's administrator is an insider, then the action may be set aside under UFTA.

■ In its second point, the Pension Plan contends that there is insufficient evidence to set aside the conveyance under UFTA because it is not an insider. Because of our disposition of the Pension Plan's first point, we need not address this point. Furthermore, for the reasons stated below, we hold that the Pension Plan has waived this point.

According to the Pension Plan, because it is not an insider, the conveyance cannot be set aside unless Husband made the transfer either with the actual intent to defraud Wife or without receiving a reasonably equivalent value in exchange for the property. TEX.BUS. & COM.CODE ANN. § 24.005(a)(1), (2) (Vernon 1986). Among the factors to be considered in determining actual intent to defraud are whether the transfer was concealed and whether the debtor was insolvent at the time of the transfer. TEX.BUS. & COM.CODE ANN. § 24.005(b)(3), (9) (Vernon 1986).

In its findings of fact and conclusions of law, the trial court found that Putman did not disclose to Wife the making of the loans or the property transfer. The trial court also found that Husband and Wife were insolvent at the time both loans were made and at the time the quitclaim deed was executed and that Putman knew or should have known of this insolvency. The Pension Plan has not challenged these findings in separate points of error; therefore, they are waived. *Waters v. King*, 353 S.W.2d 326, 328 (Tex.Civ.App.—Dallas 1961, no writ) (findings of fact which are not challenged by any points of error stand as proven facts); *Cortez v. Cortez*, 457 S.W.2d 131, 133 (Tex.Civ.App.—San Antonio 1970, no writ).

■ In its final point, the Pension Plan asserts that the trial court erred in setting aside the entire quitclaim deed and in awarding the entire property to Wife free of the outstanding obligation owed to the Pension Plan. To support this point, the Pension Plan first cites section 24.008(a)(1) of UFTA which states that a creditor may obtain an avoidance of the transfer "to the extent necessary to satisfy the creditor's claim." TEX.BUS. & COM.CODE ANN. § 24.008(a)(1) (Vernon 1986). The Pension Plan contends that, pursuant to this section, Wife is entitled only to one-half of the undivided one-sixth interest in the land. We disagree. First, we note that section 24.008 also provides that a creditor seeking relief from a fraudulent transfer may obtain "any other relief the circumstances may require." TEX.BUS. & COM.CODE ANN. § 24.008(a)(3)(C) (Vernon 1986).

■ Second, the Pension Plan's argument is flawed. The trial court found that Husband and Wife acquired the real property during the marriage relationship; therefore, the land is presumptively community property. TEX.FAM.CODE ANN. § 5.01 (Vernon 1975). In a decree of divorce, the trial court must "order a division of the estate of the parties in a manner that the court deems just and right." TEX. FAM.CODE ANN. § 3.63(a) (Vernon Supp. 1991). An equal division of the community property is not required. *Williams v. Williams*, 160 Tex. 99, 101, 325 S.W.2d 682,

**20**

684 (1959). Also, neither spouse has an absolute right to one-half of the community property. *Mahrer v. Mahrer*, 510 S.W.2d 402, 404 (Tex.Civ.App.—Dallas 1974, no writ). Rather, in dividing property upon divorce, the trial court has wide latitude and discretion. *Vallone v. Vallone*, 644 S.W.2d 455, 460 (Tex.1982). Thus, the trial court acted within its authority in awarding Wife the entire community interest in the real property.

■ Next, the Pension Plan argues that under section 24.009(d)(1)(A) of UFTA, the property remains subject to its claims and liens. TEX.BUS. & COM.CODE ANN. § 24.009(d)(1)(A) (Vernon 1986). This argument fails for two reasons. First, the trial court specifically found that the Pension Plan did not have a valid security interest in the property at the time the quitclaim deed was executed. By failing to attack this finding of fact in a separate point of error, the finding stands as a proven fact. *Waters*, 353 S.W.2d at 328. Second, the UFTA provision relied upon by the Pension Plan applies only to a good faith transferee. TEX.BUS. & COM.CODE ANN. § 24.009(d)(1)(A) (Vernon 1986). Having concluded that Putman, the Pension Plan's administrator, was an insider and that he knew of Husband and Wife's insolvency at the time the quitclaim deed was executed, we hold that the Pension Plan was not a good faith transferee and, therefore, it cannot reap the benefits of section 24.009 of UFTA.

■ Finally, the Pension Plan argues that the community estate wrongfully obtained a benefit to the extent of $18,700. The trial court specifically found that Wife did not receive any of the loan proceeds and did not know what use was made of the $18,700. The trial court also specifically denied the Pension Plan's requested finding of fact that the $18,700 went to pay community debts. Taken together, the logical inference of this finding and denied finding is that the $18,700 was not used to pay community debts. Although only Husband testified as to the use made of the loan proceeds, a trial court may disbelieve even undisputed testimony. *Brogdon v.*

*Brogdon*, 392 S.W.2d 385, 386 (Tex.Civ. App.—Fort Worth 1965, writ ref'd n.r.e.).

Furthermore, because the promissory note is a full recourse note, the Pension Plan may seek to recover the money from both Husband and Wife. Recognizing that the $18,700 promissory note is a community debt, the trial court, within its discretion, ordered that Husband alone be responsible for the debt.

We overrule all of the Pension Plan's points and, accordingly, affirm the judgment of the trial court.