Patricia Susan THOMAS, Appellant,

v.

Linda Lorraine CASALE, Appellee.

No. 2–95–178–CV.

Court of Appeals of Texas,
Fort Worth.

June 13, 1996.

Rehearing Overruled July 11, 1996.

Elizabeth Sturdivant Kerr, Watson, Kerr & Parker, P.C., Fort Worth, for Appellant.

Gary L. Nickelson and Sydney A. Beckman, Law Offices of Gary L. Nickelson, Fort Worth, for Appellee.

Before DAUPHINOT, RICHARDS and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

The trial court granted Linda Lorraine Casale a divorce from Robert Nicholas Casale. Linda named Patricia Susan Thomas as a co-respondent in the divorce, and Patricia is the only appellant. We affirm the judgment in all respects except the portion that orders Patricia to deposit $61,753.00 into the registry of the court. We reverse only

that portion of the judgment, as we will discuss.

Another co-respondent named by Linda in the divorce action is Robert's alleged alter ego, Seahorse Pool Corporation. Linda joined the co-respondents on a theory that Robert defrauded her by secretly depositing money belonging to the marital estate into a bank account that the evidence shows was created before or during Patricia's divorce and existed in her name. Linda's suit alleged that Robert had paramours on whom he lavished excessive gifts and expenditures with community funds, and that, without Linda's knowledge, Robert wasted and squandered portions of the community estate and misused his corporation as a conduit for that purpose.

Although the petition only implies that Patricia was Robert's paramour, the evidence establishes that she was. At times, Robert arranged for employment of Patricia and her son by Seahorse Pool Corporation. Linda's suit alleged that Robert devised a conspiracy to defraud her and that Patricia had notice of Robert's intent to injure Linda's community property rights. In her unverified answer, Patricia said she was not a party to fraud and denied that she had ever known of Robert's alleged intent to injure Linda's rights. Patricia also answered that the money Robert transferred into her account was presumed to be subject to his sole management control and disposition and that she had no notice to the contrary.

The divorce was granted after the court considered the evidence and issues in a four-day bench trial ending March 2, 1995. Patricia did not attend the trial, but her attorney did. The judgment was signed April 27, 1995 and ordered Patricia to surrender $61,753.00 of the money in her bank account. The court made findings of fact and conclusions of law supporting its judgment.

Patricia appeals on grounds that the evidence was both legally and factually insufficient to support the trial court's findings or conclusions that: (1) Patricia knew the deposits into her bank account were community funds from Linda and Robert's marital estate, (2) Patricia knew Robert intended to injure Linda by hiding the funds in Patricia's

account, (3) Robert had never made Patricia the owner of the funds on deposit, (4) Robert retained control of the deposited funds, and (5) that Patricia was liable to Linda under either TEX. FAM. CODE ANN. § 3.57 (Vernon 1993) or TEX. BUS. & COM. CODE ANN. § 24.001 (Vernon 1987) (Uniform Fraudulent Transfer Act).

An intimate relationship between Patricia and Robert began in 1992 after he separated from Linda but before the divorce was granted. Robert testified that Patricia and her own husband divorced on March 31, 1993 and that Patricia had her own savings account. Sometime during March 1993, Robert moved into Patricia's home, and they agreed to share living expenses. Patricia already had approximately $68,000 of her own money on deposit in her savings account at NationsBank, and Robert's name was authorized for that account in April 1993. His name was removed from the account in June 1994, almost eight months before trial.

■ On appeal, Patricia's challenge to the legal sufficiency is a "no evidence" point. In determining "no evidence" points of error, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993).

■ A "no evidence" point of error may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990);

Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361 (1960). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992).

■ Patricia's challenge to the factual sufficiency of the evidence is an "insufficient evidence" point of error, which places on her the burden of showing that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the trial court result is clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

A two-page document admitted in evidence over the objection of Patricia's attorney, lists the dates and amounts of bank deposits made by or through Robert between April 1993 and July 1994 into the savings account he and Patricia were sharing during that time. Those deposits totaled $68,752.93, and although the money came from Robert, some of the deposits were taken to the bank by Robert and some by Patricia. While both Robert's and Patricia's names were on the account, its balance at some point rose above $131,000. Robert testified that during the fourteen-month period in which he deposited a total of $68,752.93 into the account, he also withdrew a total of approximately $68,000 and used portions "[t]o defray some living expenses," to buy a bedroom suite for Patricia's home, and to pay Patricia $250 per month for using her car, although Robert owned a Cadillac that both he and Patricia drove during that time. In May 1994, Robert bought the car from Patricia with $10,000 he withdrew from the account. He also used money he withdrew from the account to pay twenty-four months' worth of his own living expenses.

Two other documents were admitted in evidence without objection, that list twelve trips taken by Robert and Patricia. The lists do not include the dates of every trip, but each trip appears to have been made while the divorce was pending. Eight appear to have been within the time that Robert and Patricia shared the savings account, and those eight destinations were Colorado, New Jersey, Minnesota, California, New York, England, Mexico, and St. Martin Island in the Dutch West Indies. Robert also testified about their trip to St. Croix in the Virgin Islands.

Eight of Patricia's ten points of error attack the legal and factual sufficiency of the evidence to support these four findings of fact by the trial court:

25. The Court finds that although the funds in the amount of $68,742.21 were in an account in the name of [Patricia] at the time of trial, no transfer was ever made by [Robert or Linda] to [Patricia]. [Challenged by points of error number three and eight.]

. . . .

27. The Court finds that at sometimes during the pendency of the divorce, NationsBank account number 16306099677 had [Robert's] name on it; the Court further finds, however, that at all times during the pendency of the divorce, [Robert] had control over the funds in [the account]. [Challenged by points of error number four and nine.]

. . . .

34. The Court finds that [Patricia] knew that [Robert] was depositing community funds in the [account]. [Challenged by points of error number one and six.]

. . . .

36. The Court finds that [Patricia] knew that [Robert] intended to injure the rights of [Linda] by his hiding community property funds in [the account]. [Challenged by points of error number two and seven.]

Under points of error numbers five and ten, Patricia argues that she should not be required to comply with the trial court's order to pay Linda $61,753.00 because the evidence was neither legally nor factually sufficient to support the trial court's *implied* finding that Linda had met the burden of proof required by either TEX. FAM. CODE ANN. § 3.57 (Vernon 1993) or TEX. BUS. & COM. CODE ANN. § 24.001 (Vernon 1987).

■ We first conclude that the Uniform Fraudulent Transfer Act is not applicable and that the trial court made no implied finding that it does apply. Although the term "creditor" is defined by section 24.002(4) of the Act, *id.*, to include a spouse who has a *claim for* property fraudulently transferred by the other spouse, we presume that the trial court's conclusions of law do not mention the Act because there is no evidence in the record that Robert was insolvent during the time he shared an account with Patricia or that the sharing of the account left Robert with "unreasonably small" assets or debts beyond his ability to pay. The Act does not apply in the absence of such evidence. *See id.* § 24.005 (Vernon Supp.1996), § 24.006 (Vernon 1987).

Neither do the conclusions of law mention TEX. FAM. CODE ANN. § 3.57 (Vernon 1993), but Patricia asks us to accept her contention that a reasonable inference to be drawn from findings of fact numbers 25, 27, 34, and 36 is that, despite legal and factual insufficiency of the evidence, the trial court related those four findings to the evidentiary requirements of section 3.57. That section enables a court to void a community property transfer made by one spouse with the intent to injure the rights of the other spouse, provided the spouse who asks the court to grant that remedy meets the burden of proving that the transferee had notice of the transferor's intent to injure the other spouse's rights. TEX. FAM. CODE ANN. § 3.57 (Vernon 1993).

Linda replies that findings of fact numbers 25, 27, 34, and 36 are immaterial to Patricia's appeal because Patricia did not challenge the following fact findings that Linda contends are sufficient to support the judgment:

No. 24.—that the $68,742.21 in Patricia's bank account at the time of trial was Robert and Linda's community property.

No. 28.—that Robert deposited community funds in the bank account for the purpose of hiding them from Linda in an attempt to avoid a just and right division of community assets.

No. 30.—that Robert and Linda did not intend the $68,742.21 to be a gift to Patricia.

No. 31.—that the $68,742.21 was never delivered or transferred to Patricia as a gift.

No. 32.—that Patricia never accepted the $68,742.21 as a gift from Robert or Linda.

No. 37.—that Robert intentionally hid community assets from Linda in the hopes that she could not find them and the court could not divide them.

■ The general rule is that a finding of fact not challenged in a point of error is binding on the appellate court. *Atascosa County Appraisal Dist. v. Tymrak,* 815 S.W.2d 364, 367 (Tex.App.—San Antonio 1991, no writ), *aff'd,* 858 S.W.2d 335 (Tex. 1993). Unchallenged findings of fact also bind the parties, and a party complaining that a trial court's findings or conclusions are incorrect or incomplete has a procedure available in trial court for requesting specified, additional, or amended findings. *See* TEX. R. CIV. P. 298; *Des Champ v. Featherston,* 886 S.W.2d 536, 541 (Tex.App.—Austin 1994, no writ); *James Holmes Enter. Inc. v. John Bankston Const. & Equip. Rental, Inc.,* 664 S.W.2d 832, 834 (Tex.App.—Beaumont 1983, writ ref'd n.r.e.). However, an equally significant principle is that findings of fact bind an appellate court only if the findings are supported by evidence of probative force. *See Block v. Waters,* 564 S.W.2d 113, 115 (Tex.Civ.App.—Beaumont 1978, no writ) (citing *Stephenson v. Perlitz,* 537 S.W.2d 287, 289 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.)). Unchallenged findings of fact are binding on the appellate court "unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986).

■ Patricia argues that the evidence shows no more than conjecture that she ever knew that Robert intended to defraud and injure Linda's rights. Linda testified that "I believe" Patricia had "complete knowledge" that Robert was acting to defraud the marital estate by putting the money in the account. Linda conceded, however, that aside from her "belief," she had no personal knowledge of what Robert may have told Patricia about the deposits made in the account.

Earlier, Linda told the court that she only had a "gut feeling" that Robert was putting their money in an account under Patricia's name, but became fully convinced of it when she looked through some trash and found a four-word note written by Robert that said: "Deposit in savings, please." Linda's direct examination by her lawyer continued:

Q. Now, it doesn't say anything about there on there that Pat's name with an account or anything, does it?

A. No, it doesn't.

Q. But that's how you became convinced; is that correct?

A. Absolutely.

The issue on appeal is not whether Robert defrauded the community estate. That was established at trial and is not challenged by Patricia. Her appeal is based on a contention that the evidence was legally and factually insufficient to prove that she knew about Robert's fraudulent intent or that the money deposited was community property. Although Linda testified that she knew of no savings account in Robert's name at the time she discovered the note in the trash, none of her testimony was sufficient to prove her vital factual allegations that Patricia knew that the money deposited was community property or knew that the deposits were made to defraud Linda.

The only witnesses who testified at trial were Robert, Linda, a process server, a certified public accountant who had been engaged to evaluate Seahorse Pool Corporation, and the attorneys who testified about attorney fees. We are not directed to any evidence that, while she shared the bank account with Robert, Patricia had notice of Robert's intent to defraud Linda or injure her rights to community assets. Neither are we persuaded that a trial court may infer such proof merely by weighing the credibility of those who testified.

To recap, the record shows that before Robert came along, Patricia had approximately $68,000 in her savings account; then, Robert's name was added to the account and another $68,752.93 was deposited by or through him; during the same period in which those deposits were made, Robert also withdrew at least $68,000 from the account and spent it on himself and Patricia; the account balance at time of trial was $68,742.21, and the evidence established that $7,000 in the account did not come from Robert. On this evidence, the trial court allowed Patricia to keep $7,000 of the account balance and ordered her to surrender the other $61,753.00 to the registry of the court. The court later ordered that the funds be released from the registry and paid to Linda.

Although there is proof that Robert put community funds into Patricia's account, there also is proof that he withdrew about the same amount and spent it. We conclude that the evidence left the trial court with nothing more than speculation about the extent of Patricia's knowledge of whether the deposits made were community property and about Robert's possible motives for placing the money into her bank account when he had accounts of his own. Although the trial court easily may have speculated that Patricia, living with Linda's husband and having just gone through her own divorce, was a willing participant in a plan to defraud Linda of a share of community funds, neither suspicion nor conjecture equates to proof by a preponderance of the evidence. *Connell v. Connell*, 889 S.W.2d 534, 539 (Tex.App.—San Antonio 1994, writ denied).

Having searched the record for the evidence and inferences that tend to support findings of fact numbers 34 and 36, we find none. Whether Patricia knew that the transitory funds were community property and whether she knew that the funds were deposited with the intent to hide them and injure Linda's rights in the marital estate, are vital facts not proved in the trial of Linda's cause of action against Patricia.

■ Because there is no dispute that the money from Robert was deposited into an account on which Patricia was a person jointly authorized with Robert to withdraw funds, we find no evidence in the record supporting finding of fact number 25 that the deposited funds were never transferred to her. Robert's name was removed from the account in June 1994, eight months before the divorce trial, and we find no evidence in the record supporting finding of fact number

27 that Robert had control of the funds in the account at all times while the divorce was pending.

There is no evidence to conclude that the money still on deposit in Patricia's account at the time of judgment was an in-kind equivalent to the money that Robert had deposited. Well before trial, he had already withdrawn and spent as much money as he had deposited, if not more. We conclude that the evidence afforded the trial court no basis in law or fact to order Patricia to surrender $61,753.00 to Linda. Patricia's own funds in the account exceeded that amount before Robert added the funds that he later withdrew and spent.

Although Patricia does not challenge finding of fact number 24 on appeal, we find no evidence to support that finding that all of the funds in Patricia's account at the time of trial were the community property of Robert and Linda, and we reject Linda's contention that the other unchallenged findings of fact numbers 28, 30, 31, 32, and 37 are alone sufficient to support the judgment against Patricia.

Points of error numbers one, two, three, four, six, seven, eight, and nine are sustained. We sustain points of error numbers five and ten only with regard to their assertion that the evidence is legally and factually insufficient to support an implied finding by the trial court that Linda had met the burden of proof required by TEX. FAM. CODE ANN. § 3.57 (Vernon 1993). We overrule points five and ten only with regard to their reliance upon TEX. BUS. & COM. CODE ANN. § 24.001 (Vernon 1987).

We hold that Linda Lorraine Casale has no lawful right to the $61,753.00 deposited in the registry of the court under the judgment. We reverse the portion of the judgment that orders Patricia Susan Thomas to deposit $61,753.00 into the registry of the court. We also reverse the trial court's post-judgment order that the trial court clerk pay that sum of money to Linda Lorraine Casale from the registry of the court. On that issue, we render judgment that Patricia Susan Thomas is entitled to have the $61,753.00 returned to her by the trial court, and the clerk of that court is ordered to pay to Patricia Susan

Thomas, from the registry, $61,753.00 plus the interest, if any, that may have accrued. In all other respects, the judgment is affirmed.

LIVINGSTON, J., (nonpanel) dissents without opinion.