CHU v. HONG

(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-279-CV

WILLIAM CHU APPELLANT

V.

CHONG HUI HONG APPELLEE

------------

FROM THE 322ND DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

This appeal concerns a lawyer, Appellant, who conspired with Appellee’s husband for the purpose, and with the effect, of cheating Appellee out of her share of the family business, a donut shop.  The jury found Appellant’s conduct was conspiratorial, fraudulent, malicious, and violated the Texas Uniform Fraudulent Transfer Act.
(footnote: 1)
 The State Bar’s rules of professional conduct forbid a lawyer to commit any act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer, or to engage in conduct that involves dishonesty, fraud, deceit, or misrepresentation.  
See
 T
ex. Disciplinary R. Prof’l Conduct
 8.04(a) (1), (2), and (3) 
reprinted in
 
Tex. Gov’t Code Ann.
, tit. 2, subtit. G app. A (Vernon 2005) (
Tex. State Bar R. 
art. X, § 9).  For Appellant to engage in such conduct and, in this appeal, to attempt to explain it as merely negligence on his part conflicts with the jury’s findings that Appellant’s actions were conspiratorial, fraudulent, and malicious.  Negligence may occur when the actor fails to exercise the standard of care that the law would require of a reasonable man in the circumstances.  Here, however, the jury found Appellant’s conduct was wilful and fraudulent.  It was not negligent.  After considering the five issues raised by Appellant, we affirm.

Background

Appellee, Chong Hui Hong, and her husband, Gyu Chul Kim (Gyu), were married  from 1996 until 1999, when they separated, stopped living together as husband and wife, and eventually divorced.  While married, they jointly purchased, owned, and operated a donut shop, for which they filed an Assumed Name Certificate in the records of the Tarrant County Clerk.  In 1998, they both signed an agreement to sell the donut shop to buyers whose attorney was Appellant, William Chu.

The original agreement required the buyers to pay Appellee and her husband, Gyu, a total price of $210,000 for the donut shop, including a $20,000 down payment.  On November 6, 1998, the buyers gave Appellee and her husband a check for the $20,000 down payment.  On November 18, 1998, before Appellee and her husband, Gyu, cashed the check, the agreement was  modified in writing to reduce the total sales price to $180,000. The modification specified the down payment as the $20,000 already paid to Appellee and her husband, Gyu.  Finally, the buyers ordered payment of the $20,000 check stopped and refused to pay anything.

Appellee notified both the buyers and her husband, Gyu, that Appellee would not close the sale of the donut shop because she considered their agreement had become void.  In response, the buyers’ attorney, Appellant, William Chu, wrote a letter to Appellee and her husband, Gyu, demanding that either they close under the terms of the modified agreement or face litigation.  Appellee still refused to close.

Without Appellee’s knowledge, authority, or consent, her husband, Gyu, went to Appellant’s office and, with Appellant’s knowledge of the circumstances, signed another amendment to the agreement stating for the first time that Gyu was sole owner of the donut shop.  Gyu then signed documents prepared by Appellant’s office staff pursuant to Appellant’s instruction that purported to convey the entire title and possession of the donut shop to the buyers.  Appellant testified that when Gyu was in his office, Appellant was aware that Appellee had an ownership interest in the donut shop.  Appellant’s only explanation for not contacting Appellee and asking that she furnish him her power of attorney (that could have authorized Gyu to act for her in the sale) was: “I wasn’t requested to get one.”  Appellee first learned of the sale from Gyu to the buyers when she went to work at the donut shop on February 24, 1999, discovered the buyers in possession, and was ordered to leave the premises.  After the sale of the donut shop, Gyu sent the proceeds by wire transfer to Korea.  Soon thereafter, Gyu returned to Korea.

Appellee’s suit was filed March 16, 1999, only against Gyu and one of the buyers of the donut shop seeking a declaratory judgment finding that the agreement between Gyu and the buyers was void.  
See 
Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (V
ernon
 2002).
  Appellee also sought damages for conversion and Gyu’s fraudulent conveyance of Appellee’s property.  On March 18, 1999, Gyu filed his original petition seeking a divorce from Appellee.  Appellee’s final pleading before trial asked that she be divorced from Gyu and that she be awarded a division of community property.  Appellee also sued Appellant for fraudulently transferring the donut shop and for conspiring with Gyu to convert the business to the buyers.  The suits were consolidated on March 31, 1999.  Appellee’s pleading alleged that she sought the remedies and relief authorized by 
s
ection
 24.008
 of the business and commerce code.

The jury found that:  (a) Gyu fraudulently transferred the donut shop to the buyers; (b) Appellant, Gyu, and the buyers converted the donut shop that belonged to Appellee; (c) Gyu did not comply with his fiduciary duties to Appellee; (d) Appellant and the buyers were part of a conspiracy that damaged Appellee; and (e) clear and convincing evidence established that the harm to Appellee resulted from the malice or fraud of Appellant, Gyu, and the buyers. 

Further, the jury found that Appellee suffered actual damages of $140,000 as the value of the donut shop, plus $190,000 for lost profits during the time she was denied access to, possession, and ownership of the donut shop.  The jury also found that Appellant acted toward Appellee with malice or fraud and awarded Appellee $1,500,000 punitive damages for Appellant’s conduct.

The jury awarded Appellee attorney’s fees of $65,000 through trial, $10,000 for appeal, and another $10,000 for appeal, if any, to the supreme court.  The trial court’s judgment does not condition the award of appellate attorney’s fees upon Appellee’s success on appeal, and Appellant does not complain of that feature. 

The trial court’s judgment grants a divorce to Appellee and recites that Appellee is entitled to judgment against Appellant based on the jury’s verdict.  The jury found that Appellant, Gyu, and the buyers conspired to fraudulently transfer the donut shop to the buyers, which constituted fraud and malice against Appellee.  The judgment awards damages in accordance with the jury’s verdict.  The trial court found that the purported sale of the donut shop was void and ordered the buyers divested of ownership and possession.  The court awarded possession of the donut shop to Appellee, effective at 1:30 p.m. on March 13, 2004.  Finally, the judgment awarded Appellee authority to levy against the assets of the donut shop to enforce the judgment and recover assets.  Only Appellant appeals the trial court’s judgment.

Appellant’s First Issue

Appellant’s first issue asks whether the Uniform Fraudulent Transfer Act creates personal liability for Appellant’s conduct.  We are convinced that it does.

The question of whether a debtor has conveyed property with the intent to defraud creditors is ordinarily a question for the trier of fact.  
Flores v. Robinson Roofing & Constr. Co.
, 
161 S.W.3d 750, 754-55 (Tex. App.—Fort Worth 2005, pet. denied) (op. on reh’g).  A fraudulent transfer occurs when a debtor makes a transfer with intent to hinder, delay, or defraud his creditors by placing the debtor’s property beyond the creditor’s reach.  
Nobles v. Marcus
, 533 S.W.2d 923, 925 (Tex. 1976).  The purpose of the Uniform Fraudulent Transfer Act is to prevent transfers of property with intent to defraud creditors.  
Flores, 
 161 S.W.3d at 754. 
 
Intent is a fact question uniquely within the realm of the trier of fact because it depends upon the credibility of the witnesses and the weight to be given to their testimony.  
Spoljaric v. Percival Tours, Inc.
, 708 S.W.2d 432, 434 (Tex. 1986).

The relationship between a husband and wife creates a fiduciary relationship so that the spouses are bound by a fiduciary duty when dealing with the community estate.  
Sw. Tex. Pathology Assocs. v. Roosth, 
27 S.W.3d 204, 208 (Tex. App.—San Antonio 2000, pet. dism’d w.o.j.); 
Connell v. Connell
, 889 S.W.2d 534, 541 (Tex. App.—San Antonio 1994, writ denied).  Moreover, unfairly disposing of the other spouse’s community property results in the presumption of constructive fraud and may impose liability on a third party, such as Appellant, who knowingly participates in the breach of the fiduciary duty.  
See Connell,
 889 S.W.2d at 541
.  
Whether the conveyance was made with intent to defraud creditors or whether the third party had knowledge or notice of such intent are fact questions for the jury.  
See id. 
at 542.

For purposes of the Uniform Fraudulent Transfer Act, an “insider” is an entity (Appellant) whose close relationship with the debtor (Gyu) subjects any transactions made between the debtor and the insider to heavy scrutiny.  
Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.,
 80 S.W.3d 601, 609 (Tex. App.—Houston [1st
 Dist.] 2002, no pet.).

First, we turn to the definitions contained in the Uniform Fraudulent Transfer Act.  “Creditor” means “a person . . . who has a claim,” such as Appellee.  “Claim” means a “right to property.”  “Debtor” means “a person who is liable on a claim,” such as Appellant.  “Transfer” means “every mode of parting with an interest in an asset,” such as the conveyance of Appellee’s share of community property under the guise that Appellee has no ownership rights in it, or that it is exclusively owned by someone else.  “Property” means “anything that may be the subject of ownership.”  
See
 Tex. Bus. & Com. Code Ann. § 24.002 (V
ernon 2002).

The jury was instructed by the court’s charge that a debtor’s transfer is fraudulent as to a creditor, whether the creditor’s claim arose within a reasonable time before or after the transfer, provided the transfer is done with actual intent to hinder, delay, or defraud the creditor.  The court’s charge also informed jurors that the term “convert” or “conversion” as used in jury question No. 2 means taking of the property without Appellee’s authorization or consent.  In answering question No. 2, the jury unanimously found from the evidence that Appellant converted property belonging to Appellee without her consent.

In other answers to jury questions, the jury unanimously found from the evidence (question No. 4) that Appellant knowingly participated, aided, or assisted in the breach of fiduciary duty owed Appellee by her husband.  The jury also found from the evidence (question No. 5) that Appellant was part of a conspiracy with the other defendants that damaged Appellee.

The charge included an instruction with question No. 5 that to be part of a conspiracy, Appellant “must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in damage to [Appellee].”  Further, the charge instructed that “a civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose by unlawful means” and that to be liable for conspiracy, it must be shown that Appellant intended to cause the injury or was aware of the harm likely to result from the wrongful conduct.

In question No. 9, the jury found from clear and convincing evidence (that produced a firm belief or conviction of the truth of the allegations against Appellant) that Appellant’s conduct toward Appellee resulted from malice or fraud.  Malice was defined for the jury as either Appellant’s specific intent to cause substantial injury to Appellee, or Appellant’s act or omission that from his
 standpoint at the time involved an extreme degree of risk known to him and with which he nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

Section 24.005 of the Uniform Fraudulent Transfer Act contains a non-exclusive list of facts and circumstances, known as the badges of fraud, that may be considered in determining fraudulent intent.  
See 
Tex. Bus. & Com. Code Ann. § 
24.005(b);
 
Flores,
 161 S.W.3d at 755.  The evidence clearly shows and convinced the jury that Gyu, a debtor, aided by Appellant, a third party, made the transfer of community property, the donut shop, with actual intent to hinder, delay, or defraud a creditor, Appellee.  The evidence also shows that soon after the transfer of ownership in the donut shop, Gyu sent the proceeds of the sale to Korea and actually went to Korea himself.  Moreover, the evidence shows that Appellant knew from the start of their relationship that Gyu was not the only owner of the donut shop, but Appellant nevertheless conspired to transfer the business from Gyu alone to the buyers.  As a conspirator, the evidence shows that Appellant was present on February 23, 1999 when the transaction between Gyu and the buyers was completed in Appellant’s office.  At that time, the buyers tendered the agreed upon sales price and Gyu signed a bill of sale.  The bill of sale states that it was executed by Gyu on December 1, 1998, and the notary certification lists the same date.  The notary was an employee in Appellant’s office.  Although Appellant denied  having knowledge that his employee backdated the bill of sale, Appellant admitted that the December 1, 1998 dated listed on the bill of sale, notarized by his employee, was incorrect and the date should have been listed as February 23, 1999.

The evidence shows that in the transfer of the donut shop, Appellant acted as an “insider” who, because of his close relationship to Gyu in their conspiratorial purpose of defrauding Appellee, will have the transfer subjected to heavy scrutiny.  
See Tel. Equip. Network, Inc.
, 80 S.W.3d at 609.  Here, the jury found from the evidence that Appellant and Gyu had joined forces and schemed to divest Appellee of her share of the business.  Appellant’s own conduct, including the failure to request a power of attorney from Appellee, made himself an “insider” in that fraudulent enterprise with Gyu.  The principal factors in determining insider status are the closeness of the relationship between the transferees (buyers) of the property, their attorney (Appellant), and the debtor (Gyu). 
 Id.
  An attorney, such as Appellant, is liable for knowingly committing a fraudulent act that injures someone such as Appellee, or for knowingly entering into a conspiracy to defraud someone such as Appellee.  
See Likover v. Sunflower Terrace II, Ltd.
, 696 S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no pet.).

Moreover, the provisions of the Uniform Fraudulent Transfer Act do not displace principles of equity or the law relating to fraud, and those principles, as well as the law, supplement its provisions.  
See 
Tex. Bus. & Com. Code Ann. § 24.011 (V
ernon
 2002).
  Because we answer the question raised by Appellant’s first issue in the affirmative, that on the facts the jury found in this case the Uniform Fraudulent Transfer Act does create personal liability for Appellant’s conduct, we overrule his first issue.  
See 
Tex. Bus. & Com. Code Ann.
 §§ 24.002, 24.005, 24.006, 24.008, 24.010 (Vernon 2002).

Appellant’s Punitive Damages Issues

Appellant’s next three issues ask whether the Uniform Fraudulent Transfer Act authorizes an award of punitive damages and whether there is legally and factually sufficient, clear and convincing evidence of actual malice or fraud to support the award of punitive damages and whether the size of the punitive damages awarded is so constitutionally excessive, or so against the great weight and preponderance of the evidence, as to be manifestly unjust.  We will discuss the three issues as one.
 

To be entitled to an award of punitive damages, Appellee had to prove by clear and convincing evidence that the harm with respect to which Appellee seeks recovery of exemplary damages resulted from fraud or malice committed by Appellant.  
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 41.003 (Vernon Supp. 2004-05). 
 Clear and convincing evidence is defined as that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. 
 Transp. Ins. Co. v. Moriel
, 879 S.W.2d 10, 31 (Tex. 1994).  This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings.  
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980).
 

The Texas Supreme Court has recently reiterated the appropriate scope of appellate review when the burden of proof at trial was clear and convincing evidence and the appellant on appeal challenges the sufficiency of a fact finding:

In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so.  A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.  This does not mean that a court must disregard all evidence that does not support the finding.  Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient.

Sw. Bell Tel. Co. v. Garza
, 164 S.W.3d 607, 627 (Tex. 2004).

Appellant argues that the evidence the jury heard of his misconduct shows only that he was guilty of professional negligence, nothing more.  We disagree and can only conclude that his misconduct shows that, as the jury found, Appellant clearly had a fraudulent and malicious intent to act as the catalyst for defrauding Appellee by acting with Gyu and the buyers of the donut shop to deprive Appellee of her property. Appellant’s misconduct was shown fully by the evidence and sufficiently supports the $1,500,000 punitive damages the jury awarded as punishment and deterrence.  The punitive damages are not unconstitutionally excessive because they are reasonably proportionate to the actual damages the jury found before any reduction or remittitur was made.  
Sw. Inv. Co. v. Neely
, 452 S.W.2d 705, 708 (Tex. 1970).

Based upon the evidence, the jury awarded Appellee actual damages of $330,000 and punitive damages of $1,500,000.  The trial court ordered that Appellee is entitled to immediate possession of the donut shop and thus remitted $140,000 as the jury’s finding of the value of the business.  The court entered judgment against Appellant for $190,000 actual damages plus prejudgment interest of $57,000 on that amount.  Because of Appellant’s misconduct, and applying the appropriate standard of review, we do not find the punitive damages of $1,500,000 to be excessive, or against the great weight and preponderance of the evidence, or manifestly unjust.  We hold there was clear and convincing evidence to support the punitive damages award in favor of Appellee.  We overrule each of Appellant’s challenges to, and concerns about, the punitive damages that are included in the second, third, and fourth issues.

The Attorney’s Fees
 
Issue

In his fifth issue, Appellant asks whether awarding attorney’s fees in this case is appropriate.  In other words, he challenges Appellee’s 
entitlement
 to attorney’s fees, not the 
amount
 of fees actually awarded.  We conclude that the only applicable provision for attorney’s fees in this case is that of section 24.013 of the 
U
niform
 F
raudulent
 T
ransfer
 A
ct
 
that enables the trial court to award costs and reasonable attorney’s fees as are equitable and just.  
See 
Tex. Bus. & Com. Code Ann.
 § 24.013 (“the court may award costs and reasonable attorney’s fees as are equitable and just”).
  
That provision of the statute gave the trial court the sound discretion to award the attorney’s fees
 
to Appellee based upon the evidence the court heard.  
See Bocquet v. Herring
, 972 S.W.2d 19, 20-21 (Tex. 1998) (reviewing similar statutes that provide a court “may award” attorney’s fees).  The fees are equitable and just. 

This case is totally unlike 
Thomas v. Casale
, 924 S.W.2d 433 (Tex. App.— Fort Worth 1996, writ denied), where a trial court made neither an actual nor an implied finding of fact nor a conclusion of law that the Uniform Fraudulent Transfer Act had any application to that case, because of an absence of evidence.  
Id. 
at 437.  We overrule Appellant’s fifth issue.

Conclusion

Having overruled all of Appellant’s issues after careful consideration of each one, we affirm the judgment of the trial court.

DIXON W. HOLMAN

JUSTICE

PANEL B:  LIVINGSTON, HOLMAN, and GARDNER, JJ.

GARDNER, J. DISSENTS

DELIVERED:  October 20, 2005

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-279-CV

WILLIAM CHU APPELLANT

V.

CHONG HUI HONG APPELLEE

------------

FROM THE 322ND DISTRICT COURT OF TARRANT COUNTY

------------

DISSENTING OPINION

------------

I disagree that the Texas Uniform Fraudulent Transfer Act (TUFTA) creates personal liability of Appellant for the damages and attorney’s fees assessed against him.  I share the majority’s reaction to Appellant’s egregious misconduct as a lawyer.  I believe he should be referred to the grievance committee.  But I cannot agree that Appellee was entitled to maintain an independent cause of action against him under that Act in seeking to void the fraudulent transfer of community property and in seeking damages in the context of her divorce.  By upholding liability of Appellant under TUFTA, I believe the majority clouds the remedies applicable to spouses on divorce as well as the scope of TUFTA.  I also believe the majority opinion conflicts with current Texas law.

The majority affirms based upon the jury’s finding that Appellant conspired with the buyers and Appellee’s husband to fraudulently transfer the donut shop.  But the majority does not address an essential prerequisite for a civil conspiracy.  Liability for civil conspiracy requires participation in an underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable
.
(footnote: 1)  
The underlying tort Appellee relies on is her husband’s violation of TUFTA by fraudulently transferring the donut shop business to Appellant’s clients, as found by the jury.  If Appellee had no cause of action against her husband under that Act, then Appellant cannot be liable for conspiracy to violate that Act.  The preliminary question we must answer, then, is whether Appellee had a cause of action against her husband under TUFTA.

The purpose of TUFTA is to provide a statutory cause of action through which creditors may seek recourse for fraudulent transfers of assets by debtors.
(footnote: 2)  The majority accepts Appellee’s argument that, as a spouse, she is a “creditor” under TUFTA as to her husband’s fraudulent transfer, concluding that she has a valid, underlying tort cause of action against her husband under that Act.
(footnote: 3)  I disagree.  Section 24.002(4) of TUFTA includes “a spouse” in the definition of the term “creditor,” but it is a logical fallacy to conclude that all spouses are therefore creditors within the meaning of the Act.  There are at least two reasons why that cannot be so.  First, that is not what the section says.  Section 24.002 provides the following definitions: 

(3) “Claim” means a right to payment or property . . .

(4) “Creditor” means a person, including a spouse, . . . 
who has a claim.

. . . . 

(6) “Debtor” means a person who is liable on a claim.
(footnote: 4) 

Section 24.005(a), the operative section of TUFTA, states:

A transfer made . . . by a debtor is fraudulent as to a creditor, whether 
the creditor’s claim arose
 
before
 
or
 within a reasonable time 
after 
the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor or debtor[.]
(footnote: 5)
 The transfer fraudulently deprived Appellee of her ownership right in the donut shop.  But nothing in the briefs or record suggests that Appellee had a “claim” against her husband either before or within a reasonable time after his transfer of the donut shop apart from the fraudulent transfer.  Without such a claim, Appellee is not a “creditor,” even though she is a “spouse.”
(footnote: 6)  Likewise, her husband was not a debtor apart from the transfer.  
The language of Section 24.005(a) contemplates a claim that existed “before” or “within a reasonable time after” and apart from the fraudulent transfer, not a claim created by the transfer itself.  Absent evidence of a claim that either pre-existed or came into existence shortly after the transfer, I would hold that Appellee had no statutory cause of action as a “creditor” against her husband within TUFTA. 

In addition, I have grave doubts that the majority’s holding can be squared with current law.  Appellee could not become a “creditor” as a result of the fraudulent transfer because the donut shop was community property.  The injury resulting from the fraudulent transfer was to the community estate, not to Appellee personally.  
In 
Schlueter v. Schlueter
, the Supreme Court of Texas held that a spouse has 
no independent cause of action
 for actual or exemplary damages for fraud in disposing of community assets
.
(footnote: 7)  Instead, the concept is one of “fraud on the community,” the essential character of which is “a deprivation of community assets as opposed to a tort committed against a person or his or her separate property.”
(footnote: 8)  The trial court may consider the wrong in awarding a disproportionate division of the community estate to the injured spouse to compensate for the community property wrongfully expended, transferred, or dissipated.
(footnote: 9)  But TUFTA does not define “creditor” to include the community estate on divorce. 

Holding that a spouse has an independent cause of action under TUFTA for a fraudulent transfer of community property seems to conflict with 
Schlueter
’s holding that no independent cause of action for a fraudulent transfer of community property exists.  As the supreme court in 
Schlueter
 explained in describing the remedies of a spouse for fraud on the community,
 the trial court may consider actual or constructive fraud by one spouse in disposing of community property when it divides the community estate.
(footnote: 10)  The claim for fraud on the community “is a means to an end . . . to obtain a greater share of the community estate, in order to compensate the wronged spouse for his or her lost interest in the community estate.”
(footnote: 11)  As additional remedies for fraud on the community, the court may allow the wife to establish her ownership right in specific property fraudulently transferred as against third party possessors.
(footnote: 12)  The court may also award a money judgment from one spouse to the other to achieve an equitable division up to the specific value of the lost community property.
(footnote: 13)  But because the amount of a money judgment is directly referable to the specific value of the lost community property, the award will never exceed the value of the community estate.
(footnote: 14)  Exemplary damages may not be awarded for fraud on the community estate.
(footnote: 15)
 TUFTA preceded 
Schlueter, 
and provides remedies that are similar but broader, including allowance of attorney’s fees and “any other relief the circumstances may require,” which may include actual and punitive damages.
(footnote: 16)  However, I believe that, unless and until the supreme court says differently,
 Schlueter
 precludes a holding that TUFTA provides an independent tort cause of action for Appellee against her husband under these facts.
(footnote: 17)
 In addition to finding a fraudulent transfer in violation of TUFTA by the husband, the jury also found that the husband converted Appellee’s ownership interest in the donut shop and breached his fiduciary duties to Appellee. However, claims of constructive fraud, breach of fiduciary duty, conversion, or waste in disposing of the community estate, like claims of fraud in transferring community property, cannot be brought as independent torts in a divorce proceeding, as those claims are also subsumed within the spouse’s claim of “fraud on the community” to be considered in the division of the community estate.
(footnote: 18)  Thus, those additional jury findings against Appellee’s husband do not establish an independent tort committed against Appellee, without which she has no action for conspiracy by Appellant.
(footnote: 19)
 I would sustain Appellant’s first issue and hold that the trial court erred in rendering judgment against Appellant for personal liability based upon TUFTA.  It appears that the trial court reached the right result as to the husband and buyers in setting aside the transfer and awarding Appellee the business as a part of the property division in the divorce decree, even though it was for the wrong reason.
(footnote: 20)  Those parties have not appealed, and Appellant does not challenge the assessment of actual damages against him for the lost profits nor does he challenge the award of punitive damages other than to argue that it was excessive.  In 
Schlueter
, the supreme court expressly declined to consider whether and to what extent a spouse may maintain an action against a third party who participated or conspired with the other spouse to commit a fraud on the community.
(footnote: 21)  I believe that the issue is sufficiently raised here, and that we should proceed to consider whether all or some portion of the judgment may be upheld against Appellant based upon conspiracy to commit fraud on the community, or, alternatively, based upon the separate jury finding against him of common law conversion.

ANNE GARDNER

JUSTICE

FOOTNOTES
1:
Tex. Bus. & Com. Code Ann.
 § 24.005(a)(1) (Vernon 2002).

1:
Tilton v. Marshall
, 925 S.W.2d 672, 681 (Tex. 1996);
 
Cmty. Initiatives, Inc. v. Chase Bank of Tex.
, 153 S.W.3d 270, 285 (Tex. App.—El Paso 2004, no pet.). 

2:
Blackthorne v. Bellush
, 61 S.W.3d 439, 443 (Tex. App.—San Antonio 2001, no pet.); 
see also Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.,
 80 S.W.3d 601, 607 (Tex. App.—Houston [1st
 Dist.] 2002, no pet.) (noting Act designed to prevent transfers of property by debtor who intends to defraud creditors by placing assets beyond their reach).  

3:
Appellee relies upon 
Thomas v. Casale
, 924 S.W.2d 433 (Tex. App.—Fort Worth 1996, writ denied).  In that case, as noted by the majority on the instant case, this court did not hold that TUFTA applied but reversed on the basis that the judgment could not be upheld under Section 3.57 of the Texas Family Code, which enables a court to void a community property transfer made by a spouse after a divorce petition is filed, provided the spouse who asks the court to grant that remedy meets the burden of proving that the transferee had notice of the transferor’s intent to injure the other spouse’s rights.
  Id.
; 
see 
Act of May 4, 1979, 66th
 Leg., R.S., ch. 193, § 1, 1979 Tex. Gen. Laws 421, 421, 
recodified by 
Act of Apr. 3, 1997, 75th
 Leg., R.S., ch. 7, § 1, 1997 Tex. Gen. Laws 8, 32-33 (current version at 
Tex. Fam. Code Ann. 
§ 6.707 (Vernon 1998)).  

4:
Tex. Bus. & Com. Code Ann.
 § 24.002(3), (4), (6) (Vernon 2002) (emphasis added).

5:
Id.
 § 24.005(a) (emphasis added).  

6:
See, e.g.
,
 Mladenka v. Mladenka, 
130 S.W.3d 397, 401-02 (Tex. App.—Houston [14th
 Dist.] 2004, no pet.) (affirming judgment setting aside conveyance by ex-husband to brother of all his non exempt assets as fraudulent conveyance under TUFTA in post judgment enforcement action by wife as judgment creditor); 
Goodwin v. Goodwin
, 451 S.W.2d 532, 534 (Tex. Civ. App.—Amarillo 1970) (holding that wife with divorce judgment granting lien on airplane that had been part of community estate was creditor entitled to set aside conveyance by husband pending divorce), 
rev’d on other grounds
, 456 S.W.2d 885 (Tex. 1970).  

7:
Schlueter v. Schlueter
, 975 S.W.2d 584, 585-86, 589-90 (Tex. 1998); 
see also
 
Mayes v. Stewart
, 11 S.W.3d 440, 447-48 (Tex. App.—Houston [14th
 Dist.] 2000, pet. denied); 
In re Marriage of Moore,
 890 S.W.2d 821, 827 (Tex. App.—Amarillo 1994, no writ); 
Belz v. Belz
, 667 S.W.2d 240, 247 (Tex. App.—Dallas 1984, writ ref’d n.r.e.).

8:
Schlueter
, 975 S.W.2d at 589.

9:
Id.
 at 588 (citing 
Belz
, 667 S.W.2d at 247).

10:
Id.
 at 588-89.

11:
Id. 
at 588 (quoting 
Belz
, 667 S.W.2d at 246-47).

12:
See Cohrs v. Scott, 
161 Tex. 111, 338 S.W.2d 127, 132-133 (1960) (recognizing and citing prior cases allowing recovery against “third party possessor” and establishing resulting trusts in favor of dispossessed spouse in community property fraudulently transferred); 
Ginsburg v. Chernoff/Silver & Assocs., Inc.
, 137 S.W.3d 231, 237 (Tex. App.—Houston [1st
 Dist.] 2004, no pet.); 
cf. J. Michael Putman, M.D.P.A. Money Purchase Pension Plan v. Stephenson
, 805 S.W.2d 16, 17-19 (Tex. App.—Dallas 1991, no writ) (setting aside deed to third party “insider” by husband pledging community interest in real estate as collateral for existing note).
 

13:
Schlueter
, 975 S.W.2d at 588.

14:
Lucy v. Lucy
, 162 S.W.3d 770, 777 (Tex. App.–El Paso 2005, no pet.)
 (citing 
Schlueter
, 975 S.W.2d at 588).

15:
Schlueter, 
975 S.W.2d at 589
; 
see also In re Marriage of Moore, 
890 S.W.2d at 825-29
.

16:
Tex. Bus. & Com. Code Ann. 
§ 24.008(a), 24.009(b) (Vernon 2002) (allowing recovery of monetary damages equal to value of asset or amount of debt, whichever is less).  
But see Flores v. Robinson Roofing & Constr. Co.
, 161 S.W.3d 750, 756-57 (Tex. App.—Fort Worth 2005, pet. denied) (op. on reh’g) (applying catchall provision in Section 24.008(a) for “any other relief” to allow remedies other than value of asset transferred); 
Airflow Houston, Inc. v. Theriot
, 849 S.W.2d 928, 933-934 (Tex. App.–Houston [1st
 Dist.] 1993, no writ) (allowing recovery of full amount of debt owed in excess of value of asset under catchall provision). Courts are split on whether punitive damages may be recovered under various versions of the Uniform Fraudulent Transfer Act.  
See DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc
., 384 F.3d 338, 354-55 (7th
 Cir. 2004) (certifying question to Indiana Supreme Court and listing jurisdictions allowing and disallowing punitive damages under Act). 

17:
See Lubbock County v. Trammel’s Lubbock Bail Bonds, 
80 S.W.3d 580, 585 (Tex. 2002) (explaining that once the supreme court announces a proposition of law, the decision is considered binding precedent, and it is not for courts of appeals to abrogate or modify such precedent).

18:
Schlueter
, 975 S.W.2d at 589 (citing 
In re Marriage of Moore
, 890 S.W.2d at 829); 
see also Lucy
, 162 S.W.3d at 777-78
 (holding waste, mismanagement, and breach of fiduciary duty in connection with community funds constituted fraud on community, not separate causes of action of wife); 
Loaiza v. Loaiza
, 130 S.W.3d 894, 902 (Tex. App.—Fort Worth 2004, no pet.) (holding breach of fiduciary duty and constructive fraud by husband in making expenditures for girlfriend did not constitute independent causes of action, precluding damages and exemplary damages as matter of law); 
Harper v. Harper
, 8 S.W.3d 782, 784 (Tex. App.—Fort Worth 1999, pet. denied) (holding wife could not recover damages for separate cause of action in divorce suit for fraud against husband and his future wife). 

19:
See Tilton,
 925 S.W.2d at 681;
 
Cmty. Initiatives, Inc.,
 153 S.W.3d at 285. 

20:
See
 
Lucy,
 162 S.W.3d at 777-78 (upholding mislabeling of award such that reversal was not required and upholding disproportionate division of community estate based on fraud on the community even through trial court stated award was reimbursement).

21:
Schlueter
, 975 S.W.2d at 590.

COMMENTS AND ANNOTATIONS
Comment 1:
MAJORITY OPINION BY JUSTICE HOLMAN, DISSENT BY JUSTICE GARDNER